Filed 1/28/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PROTECT AGRICULTURAL LAND,<br><br>   Plaintiff and Appellant,<br><br>   v.<br><br>STANISLAUS COUNTY LOCAL AGENCY FORMATION COMMISSION,<br><br>   Defendant and Respondent;<br><br>CITY OF CERES,<br><br>   Real Party in Interest and Respondent. | F066544<br><br>(Super. Ct. No. 673680)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  William A. Mayhew, Judge.

Law Office of Rose M. Zoia and Rose M. Zoia for Plaintiff and Appellant.

John P. Doering, County Counsel, William Dean Wright and Thomas Boze, Deputy County Counsel, for Defendant and Respondent.

Meyers, Nave, Riback, Silver & Wilson, Edward Grutzmacher; and Michael L. Lyions for Real Party in Interest and Respondent.

-ooOoo-

## INTRODUCTION

Plaintiff Protect Agricultural Land (PAL) filed a petition for writ of mandate to challenge the decision by the Stanislaus County Local Agency Formation Commission (Stanislaus LAFCO) to approve the application submitted by real party in interest City of Ceres (City) for the West Landing Specific Plan Reorganization. PAL alleged the approval of modifications to City's sphere of influence and the approval of the annexation of 960 acres violated the California Environmental Quality Act (CEQA) and the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 (Reorganization Act).[1]

Defendants Stanislaus LAFCO and City filed a demurrer, contending that (1) Government Code section 56103[2] requires challenges to a local agency formation commission's (LAFCO) approval of an annexation and a change in a sphere of influence be brought as a "reverse validation action" and (2) PAL failed to comply with the summons and publication procedures required by the statutes governing validation actions—Code of Civil Procedure section 860 et seq. The trial court treated the demurrer as a motion for judgment on the pleadings and granted the motion without leave to amend. PAL filed this appeal.

We interpret section 56103 to mean that lawsuits seeking to set aside (i.e., invalidate) a LAFCO approval of an annexation or a change in a sphere of influence— whether brought under CEQA, the Reorganization Act, or both—are subject to the procedural requirements applicable to reverse validation actions. In this case, PAL failed to comply with those procedural requirements. Therefore, pursuant to Code of Civil

---

[1] CEQA is codified at Public Resources Code section 21000, et seq. and the Reorganization Act (formerly the Cortese-Knox Local Government Reorganization Act of 1985) is codified at Government Code section 56000 et seq.

[2] All further statutory references are to the Government Code unless otherwise indicated.

Procedure section 863, dismissal of PAL's action was required "unless good cause for such failure [wa]s shown." The trial court determined that good cause for the failure to comply had not been shown because PAL's legal research into the applicability of the procedural requirements was inadequate. Our review of the appellate record shows the trial court's express and implied findings regarding good cause are supported by substantial evidence.

We therefore affirm the judgment.

## FACTS AND PROCEEDINGS

Plaintiff PAL alleges that it (1) is an unincorporated group of citizens who are residents and property owners within Stanislaus County and (2) was formed for the purpose of protecting and preserving the environmental resources, including agricultural resources, located within Stanislaus County.

The subject matter of this litigation is City's proposal to expand its territory to the southwest. The proposed expansion was set forth in the West Landing Specific Plan, a policy document adopted by City to guide the future growth, land use, infrastructure, and public service planning and investment in a 960-acre area that, prior to this litigation, was adjacent to City in an unincorporated part of Stanislaus County. The 960 acres are bounded by Whitmore Avenue on the north, the Union Pacific Railroad right-of-way on the east, Service Road on the south, and Ustick Road on the west.

City acted as the lead agency and prepared an environmental impact report (EIR) for the West Landing Specific Plan. In June 2011, the Ceres City Council adopted resolutions certifying the final EIR for the West Landing Specific Plan. The EIR identified significant environmental impacts that could not be eliminated or mitigated to a level of insignificance, including impacts to agricultural land. For example, the EIR stated that (1) the proposal would result in the conversion of approximately 660 acres of farmland and the development of approximately 187 acres of land currently under Williamson Act contracts and (2) there were no feasible mitigation measures that would

3.

reduce these impacts to a level of insignificance. The city council adopted a statement of overriding considerations that included a finding that specific economic, legal, social, technological and other anticipated benefits of the project outweighed the significant and unavoidable environmental impacts of the project.

The city council also adopted resolutions approving the West Landing Specific Plan and authorizing the submission of an application to Stanislaus LAFCO for the modification of City's sphere of influence[3] and the annexation of the 960-acre area by City.

After City certified the EIR, adopted the statement of overriding considerations and approved the West Landing Specific Plan, City filed a notice of determination, triggering the 30-day statute of limitations for CEQA challenges to those actions. (Pub. Resources Code, § 21167, subd. (c).) PAL did not pursue a CEQA claim within that limitations period.

City's application to Stanislaus LAFCO requested it to (1) adopt a municipal service review for City, (2) approve the modification to City's sphere of influence, and (3) approve the annexation of the 960 acres to City and simultaneous detachment from the Westport Fire Protection District. For purposes of CEQA, Stanislaus LAFCO acted as a "responsible agency" in connection with the application. (Pub. Resources Code, § 21069.)

Stanislaus LAFCO considered City's application in two parts—the first concerning the municipal service review and sphere of influence modification and the second concerning the proposed annexation.

---

[3]    A sphere of influence is "a plan for the probable physical boundaries and service area of a local agency, as determined by the [LAFCO]." (§ 56076.) LAFCOs are required by statute to "develop and determine the sphere of influence of each city … within the county and enact policies designed to promote the logical and orderly development of areas within the sphere." (§ 56425, subd. (a).)

4.

In February 2012, Stanislaus LAFCO approved the municipal services review and sphere of influence modification and adopted findings regarding the environmental impacts and the statement of overriding considerations, as adopted by the city council.

In March 2012, Stanislaus LAFCO adopted a resolution approving the proposed reorganization and annexation and adopting the findings regarding the environmental impacts and the statement of overriding considerations, as adopted by the city council.

In April 2012, PAL filed a petition for writ of mandate containing two causes of action. The first alleged that Stanislaus LAFCO violated CEQA and the second cause of action alleged Stanislaus LAFCO violate the Reorganization Act. PAL's prayer for relief requested that Stanislaus LAFCO be ordered to set aside and void its approvals of the project and comply with applicable law prior to further consideration of the project. Within 60 days of the filing of its petition, PAL had not filed proof that it completed the publication and other notice requirements applicable to reverse validation actions.

In August 2012, defendants filed notice of a demurrer and motion to strike that asserted PAL's petition failed to state facts sufficient to constitute a cause of action. Defendants contended that, pursuant to section 56103, a lawsuit to set aside the approvals issued by Stanislaus LAFCO must be brought in accordance with the statutes governing validation actions, and that PAL's failure to comply with the publication of summons procedures deprived the court of jurisdiction to hear the claims.

In September 2012, the trial court held a hearing on the demurrer and motion to strike. After the hearing, the court filed a written ruling that stated the demurrer and motion to strike were untimely and the court, in an exercise of its discretion, would deem the demurrer and motion to strike to be a motion for judgment on the pleadings. The court granted the motion without leave to amend. The court reasoned that it did not have jurisdiction to overturn a completed annexation because PAL's petition did not name "all persons interested" in the area subject to annexation or timely comply with the service requirements applicable to reverse validation actions. The court found no good cause

5.

under Code of Civil Procedure sections 473 or 863 for PAL's failure to comply with the procedure applicable to reverse validation actions. To support this determination, the court specifically found that the legal research of PAL's counsel on these procedural issues was inadequate. In addition, the court overruled PAL's objections to declarations submitted by defendants and granted defendants' request for judicial notice.

In November 2012, the trial court filed a judgment disposing of all claims in PAL's petition for writ of mandate. PAL thereafter filed a notice of appeal.

## DISCUSSION

### I.     STANDARD OF REVIEW

The trial court treated defendants' demurrer and motion to strike as a motion for judgment on the pleadings. Motions for judgment on the pleadings are authorized by Code of Civil Procedure section 438 and may be made on the grounds that the court lacks jurisdiction of the subject of the cause of action or the pleading does not state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 438, subd. (c)(1)(B).)

Appellate courts review the grant of a motion for judgment on the pleadings by applying the same rules that govern review of an order sustaining a general demurrer. (*Smiley v. Citibank* (1995) 11 Cal.4th 138, 146.) In each context, appellate courts independently determine whether a cause of action has been stated. (*Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1401.)

In *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32 (*Committee for Green Foothills*), the California Supreme Court indicated that a demurrer to a cause of action alleging a violation of CEQA was subject to the same standard of review that applies to general demurrers raised in other types of lawsuits. Specifically, the Supreme Court stated that appellate review of an order sustaining a demurrer involved a de novo examination of the pleading to determine whether the facts alleged were sufficient to state a cause of action under any legal theory, such facts being

6.

assumed true for purposes of review. (*Id*. at p. 42.) "We may also consider matters that have been judicially noticed." (*Ibid*.)

We will apply the foregoing standards to both the cause of action alleging CEQA violations and the cause of action alleging violations of the Reorganization Act.

II.     PAL's CLAIM UNDER THE REORGANIZATION ACT

    A.     Background

        1.     *Reorganization Act*

The Reorganization Act was enacted to encourage planned, well-ordered, efficient urban development patterns with appropriate consideration of preserving open-space and prime agricultural lands within those patterns and to discourage urban sprawl. (§ 56001; *Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 495.) The Reorganization Act includes a legislative finding that "the logical formation and determination of local agency boundaries is an important factor" in achieving these goals. (§ 56001.) The Legislature declared that the policy underlying the act "should be effected by the logical formation and modification of the boundaries of local agencies, with a preference granted to accommodating additional growth within, or through the expansion of, the boundaries of local agencies which can best accommodate and provide necessary governmental services and housing for persons and families of all incomes in the most efficient manner feasible." (§ 56001.)

        2.     *LAFCO*

LAFCOs are a means used to achieve the purposes and policies of the Reorganization Act. (See §§ 56027, 56301 [purposes of a LAFCO].) They are administrative bodies created by the Legislature to oversee urban development. (*Community Water Coalition v. Santa Cruz County Local Agency Formation Com.* (2011) 200 Cal.App.4th 1317, 1324.) Each county in California is required to have a

7.

LAFCO. (§ 56325; *Hofman Ranch v. Yuba County Local Agency Formation Com.* (2009) 172 Cal.App.4th 805, 810.)

The powers and duties given to LAFCOs are intended to be exercised in a manner that encourages the orderly formation and extension of local government services, while balancing the competing needs for affordable housing, economic opportunities and preservation of natural resources.[4] (§ 56301; *Hofman Ranch v. Yuba County Local Agency Formation Com.*, *supra*, 172 Cal.App.4th at p. 810.) As relevant in this appeal, a LAFCO's statutory authority includes the power to approve or disapprove (1) petitions for annexation, (2) proposals for changes of organization or reorganization, and (3) requests by cities for an amendment to their sphere of influence. (§§ 56375, 56428, subd. (e).)

### 3.    *Lawsuits Challenging LAFCO Determinations*

A LAFCO annexation determination is quasi-legislative and, *before the annexation is completed* (i.e., final), may be challenged by a petition for a writ of ordinary mandamus brought under Code of Civil Procedure section 1085. (*Sierra Club v. San Joaquin Local Agency Formation Com., supra,* 21 Cal.4th 489, 495; *Bozung v. Local Agency Formation Com.* (1975) 13 Cal.3d 263, 272 [mandamus will lie to challenge an annexation before it is final] (*Bozung*).)

Once a LAFCO annexation determination is completed, however, its validity may be challenged only by an *in rem* proceeding under the validating statutes or by a quo warranto proceeding filed by the Attorney General. (*Hills for Everyone v. Local Agency Formation Com.* (1980) 105 Cal.App.3d 461, 466 (*Hills for Everyone*).) Currently, the requirement for the use of a validating action is set forth in section 56103, which provides:

---

**4**     The natural resources that are part of this balancing process include "open-space and prime agricultural lands." (§ 56301; see § 56001.)

"An action to determine the validity of any change of organization, reorganization, or sphere of influence determination completed pursuant to this division shall be brought pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure."[5]

Code of Civil Procedure section 860 provides that a public agency may test the legal validity of certain of its acts by filing an *in rem* validation action within 60 days. If the public agency does not pursue a validation action, Code of Civil Procedure section 863 authorizes any interested person to file a reverse validation action to challenge the validity of the public agency's acts. (*Robings v. Santa Monica Mountains Conservancy* (2010) 188 Cal.App.4th 952, 960.) In a reverse validation action, the summons must be (1) in the prescribed form, (2) directed to all persons interested in the matter and to the public agency, and (3) published for the period and in the manner required by statute. (Code Civ. Proc., § 863; *Environmental Coalition of Orange County, Inc. v. Local Agency Formation Com.* (1980) 110 Cal.App.3d 164, 170.) If the person bringing the reverse validation action fails to complete publication and file proof thereof within 60 days from the filing of his or her complaint or petition, the lawsuit shall be dismissed "unless good cause for such failure is shown by the interested person." (Code Civ. Proc.,

---

[5] Because *Bozung* and *Hills for Everyone* were decided in 1975 and 1980, respectively, we note that the requirement in section 56103 was adopted in 1985 and is derived from former sections 35005 and 56008.

Former section 56008 provided: "An action to determine the validity of a change of organization or a reorganization may be brought pursuant to Chapter 9 (commencing with Section 860) of Title 10, Part 2 of the Code of Civil Procedure." (Stats. 1965, ch. 2043, § 2, p. 4673.) Section 56103 uses similar language, except that it includes changes to a sphere of influence and replaces the word "may" with "shall."

Former section 35005 was part of the Municipal Organization Act of 1977 and was the provision referenced by the court in *Hills for Everyone*, *supra*, 105 Cal.App.3d at pages 465 through 467. That provision stated: "An action to determine the validity of any city incorporation, municipal reorganization, or any city change of organization completed pursuant to this part shall be brought pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure." (Stats. 1977, ch. 1253, § 9, p. 4694.)

§ 863; see *Environmental Coalition of Orange County, Inc. v. Local Agency Formation Com.*, *supra*, at p. 170.)

In *Katz v. Campbell Union High School Dist.* (2006) 144 Cal.App.4th 1024, 1028, the court set forth the following overview of validation and reserve validation actions:

> "A validation action is 'in the nature of a proceeding in rem.' ([Code Civ. Proc.,] § 860.) The form of the summons and the manner of service are statutorily prescribed. Jurisdiction of 'all interested persons' is had by publishing a summons for the time provided by Government Code section 6063. ([Code Civ. Proc.,] § 861.) The summons must contain a notice that written answers to the complaint may be filed 'not later than the date specified in the summons, which date shall be 10 or more days after the completion of publication of the summons.' ([Code Civ. Proc.,] § 861.1.) Jurisdiction 'shall be complete after the date specified in the summons.' ([Code Civ. Proc.,] § 862.) In a reverse validation action, if the interested person 'fails to complete the publication ... and to file proof thereof in the action within 60 days from the filing of his complaint, the action shall be forthwith dismissed on the motion of the public agency unless good cause for such failure is shown by the interested person.' ([Code Civ. Proc.,] § 863.)"

B.    Contentions and Issues

In this appeal, PAL acknowledges that (1) its cause of action under the Reorganization Act is subject to the procedural requirements that apply to reverse validation actions and (2) it did not comply with the requirements regarding the summons and its publication. As a result, PAL's claim that the trial court abused its discretion is limited to the court's refusal to (1) treat PAL's Reorganization Act claim as a reverse validation action and (2) allow PAL to complete the summons and publication procedure required by statute. In particular, PAL argues it should be excused for its erroneous handling of the summons because it made the showing of "good cause" required by Code of Civil Procedure section 863. Defendants disagree, contending that PAL did not demonstrate good cause for its failure to comply with the requirements applicable to a reverse validation action and, in any event, PAL cannot cure its failure to publish the summons because the 60-day period to do so has long passed.

10.

The trial court addressed the issue of good cause in its September 2012 written ruling, which stated:  "Court finds no good cause under Code of Civil Procedure §§ 473 or 863.  The legal research by [PAL's] counsel was inadequate."

C.     Good Cause Requirement

In *City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, the California Supreme Court addressed the meaning of the good cause requirement in Code of Civil Procedure section 863 and concluded that the test for what constitutes good cause for relief from default under Code of Civil Procedure section 473 also governs a claim of good cause under section 863.  (*City of Ontario, supra,* at p. 345.)  Thus, the court equated good cause with excusable neglect.

The court observed that some, but not all, mistakes of law are excusable and thus provide good cause for relief.  (*City of Ontario, supra,* 2 Cal.3d at pp. 345-346.)  On the one hand, the court noted that it was settled that an honest and reasonable mistake of law on a complex and debatable issue is excusable and constitutes good cause for relief.  (*Id*. at p. 345.)  Thus, attorneys are not expected to be omniscient.  (*Id*. at p. 346.)  On the other hand, the court referenced the rule that a mistake of law does not require relief as a matter of law.  (*Ibid*.)  Consistent with these parameters, the court stated:

> """The issue of which mistakes of law constitute excusable neglect presents a fact question; the determining factors are the reasonableness of the misconception and the justifiability of lack of determination of the correct law.  [Citation.]  Although an honest mistake of law is a valid ground for relief where a problem is complex and debatable, ignorance of the law coupled with negligence in ascertaining it will certainly sustain a finding denying relief."  [Citation.]'  [Citation.]"  (*City of Ontario*, *supra*, 2 Cal.3d at p. 346.)

Because our Supreme Court has identified the question of good cause relating to a mistake of law as presenting a question of fact, we will review the trial court's finding under the substantial evidence standard.

11.

We recognize that appellate courts generally review a trial court's determination regarding good cause under Code of Civil Procedure section 863 using the abuse of discretion standard. (E.g., *Katz v. Campbell Union High School Dist.*, *supra*, 144 Cal.App.4th at p. 1031.) The abuse of discretion standard, however, calls for varying levels of deference depending on the aspect of the trial court's ruling under review. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711; *In re Marriage of Walker* (2012) 203 Cal.App.4th 137, 146.) In particular, the trial court's findings of fact will be upheld if supported by substantial evidence and its resolution of questions of law are subject to independent (i.e., de novo) review. (*Haraguchi v. Superior Court*, *supra*, at pp. 711-712.)

D.    Analysis of Trial Court's Finding of No Good Cause

The trial court found that, for purposes of Code of Civil Procedure section 863, no "good cause" existed for PAL's failure to comply with the summons and publication requirements applicable to a reverse validation action. The court explicitly stated that the legal research of PAL's counsel was inadequate.

The trial court's finding regarding counsel's legal research was made to address a point raised in the declaration of PAL's attorney. The declaration stated that, prior to filing the action, the attorney consulted the chapter dedicated to LAFCOs in Curtin & Talbert, California Land Use and Planning Law (2006) and nothing in that chapter mentioned the need to challenge actions by LAFCOs via the validation procedures. The declaration does not mention other legal research, thus implying that the attorney relied on a single treatise.

Defense counsel submitted a declaration stating that the California LAFCO produces a guide to the Reorganization Act (i.e., the operating statute for LAFCOs throughout the state) and makes the most recent version of that guide (November 2011) available over the internet. The declaration asserts the guide is easily found by

conducting a Google search of the "Cortese-Knox-Hertzberg Local Government Reorganization Act." The declaration further asserts that the guide is useful because it (1) has an index that links topics with the appropriate statute and (2) contains notes describing the importance of each statute. The declaration attached some pages from the guide, including the page that contained the text of section 56103 with the note, "Action to determine validity of any change."

In addition, defense counsel cites *Hills for Everyone*, *supra*, 105 Cal.App.3d 461, to demonstrate that existing case law had discussed the need to comply with the validation action statutes when challenging the validity of an annexation. In that case, the court concluded that an unincorporated association could test the validity of a completed municipal annexation "only by an in rem proceeding under the validating statute or by a quo warranto proceeding." (*Id*. at p. 466.) Because the unincorporated association filed its petition for writ of mandate without preparing, publishing and serving the summons required by Code of Civil Procedure section 863, the trial court granted defendants' motion for summary judgment, which the appellate court affirmed. (*Hills for Everyone, supra,* at pp. 465, 470.)

Besides the case law and treatises addressed in the appellate briefing, we note that other secondary authorities indicate that challenges to certain LAFCO decisions must be pursued as reverse validation actions. (See 2 Cal. Land Use Practice (Cont.Ed.Bar 2013) Land Use Litigation, §§ 21.53-21.74, pp. 21-44 to 21-63 (rev. 9/13) [validation actions]; 5 Manaster & Selmi, Cal. Environmental Law & Land Use Practice (2013) § 73.16, pp. 73-59 to 73-61 [judicial review of annexation/boundary issues]; see also, 2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 2d ed. 2013) §§ 23.39, 23.146-23.151, pp. 1179, 1180, 1297-1300, (rev. 3/13) [CEQA claims brought as validation actions].) Indeed, a "practice tip" for litigants who challenge an annexation states:

13.

"**Follow Procedural Requirements of Validation Actions**. Plaintiffs must take care to follow the procedural requirements of validation actions, or their challenges may be dismissed." (5 Manaster & Selmi, Cal. Environmental Law & Land Use Practice, *supra*, § 73.16[2], p. 73-61.)

Another practice guide includes a table that lists the types of approvals that must be challenged by use of a validation action. (2 Cal. Land Use Practice, *supra*, Land Use Litigation, § 21.54, p. 21-45, (rev. 9/13).) The list of approvals includes:

"Any change of organization, reorganization, or sphere of influence determination completed under the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 (Govt C §§56000-57550)." (2 Cal. Land Use Practice, *supra*, Land Use Litigation, § 21.54, p. 21-45, (rev. 9/13).)

In addition, a frequently cited practice guide on CEQA asserts that "the requirement that a CEQA challenge to a LAFCO determination be brought as a validating action applies to most LAFCO proceedings." (2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act, *supra*, § 23.151, p. 1301, (rev. 3/13).) The practice guide restates its conclusion as follows: "In certain instances, CEQA claims must be brought under the validating action statutes.… Some of the types of approvals that must be challenged as a validating action are approvals by local agency formation commissions (LAFCOs) .…" (*Id.*, § 23.39, p. 1180.)[6]

Based on the foregoing, we conclude that the trial court's finding of inadequate legal research is supported by the evidence in the record and our own independent research. Therefore, the court's ultimate finding of no good cause does not constitute an abuse of discretion. Consequently, we will affirm the trial court's decision to dismiss PAL's cause of action under the Reorganization Act.

---

[6] This practice guide on CEQA is referenced to show that an attorney's research into bringing a CEQA claim against a LAFCO might have led that attorney to section 56103 and the requirement that lawsuits against a LAFCO be brought as reversal validation actions.

III.   CEQA VIOLATIONS

    A.    Contentions of the Parties

Defendants contend that PAL's CEQA cause of action also is barred by PAL's failure to comply with the publication and summons requirements of the validation statutes. (§ 56103; Code Civ. Proc., § 863.) In response, PAL contends: "There is no law that requires CEQA claims to be brought pursuant to the validation statutes, even if the CEQA claim is made in a petition for writ of mandate that also contains a validation law claim." We disagree with PAL's position.

    B.    Applicability of Reverse Validation Procedures

    *1.*    *Nature of PAL's CEQA Claim*

Paragraph 1 of PAL's petition alleges that Stanislaus LAFCO "adopted a Municipal Service Review for the City of Ceres, approved modification to the City's Sphere of Influence, and approved an annexation of land to the City and simultaneous detachment of the Westport Fire Protection District." Immediately after this allegation, the petition stated: "PAL challenges the adoption of the Sphere of Influence and the approval of the annexation (the project) in violation of [CEQA] and the [Reorganization Act] .…" The prayer for relief in the petition requests the issuance of a writ of mandate ordering Stanislaus LAFCO "to set aside and void its approvals of the project and to comply with all provisions of CEQA" and other applicable law prior to further consideration of the project.

These allegations clearly demonstrate that PAL's CEQA claim is an attack that seeks to set aside (i.e., declare void) Stanislaus LAFCO's approval of an annexation and a change in a sphere of influence. PAL's appellate briefing further confirms that it is pursuing the CEQA claim to invalidate these approvals. In reference to its CEQA claim, PAL argues: "The project approval must be set aside." Therefore, the CEQA claim is *a challenge to the validity* of Stanislaus LAFCO's determination regarding the annexation and the change in the sphere of influence and, consequently, qualifies as an "action to

15.

determine the validity of any change of organization, reorganization, or sphere of influence determination completed pursuant to [the Reorganization Act]" for purposes of section 56103. Accordingly, section 56103 applied to PAL's CEQA claims and required PAL to comply with the statutes governing validation actions. (See Code Civ. Proc., § 860.)

Based on the foregoing interpretation, we reject PAL's contention that there is no law that its CEQA claim must be brought pursuant to the validation statutes. Section 56103 is the law that imposes this requirement. (2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act, *supra*, § 23.151, p. 1300, (rev. 3/13).) This conclusion of law can be generalized as follows: Section 56103 applies to CEQA claims that seek to invalidate a LAFCO's approval of an annexation or a modification of a sphere of influence and, therefore, the procedures applicable to a reverse validation action apply to those particular types of CEQA claims against a LAFCO.[7]

### 2. Case Law

PAL also asserts that the cases cited by defendants are inapposite. PAL, however, does not discuss *Hills for Everyone*, *supra*, 105 Cal.App.3d 461. In that case, an unincorporated association filed a petition for writ of mandate to compel Orange County's LAFCO to set aside its approval of an annexation of territory by the City of Yorba Linda. (*Id*. at p. 463.) The association alleged the LAFCO (1) violated CEQA and (2) violated the Knox-Nisbet Act[8] by failing to consider the factors set forth in that act before approving the project. (*Hills for Everyone, supra,* at p. 463.) The defendants

---

[7] We do not address the legal issue whether CEQA claims that seek a lesser form of relief from a LAFCO's annexation or sphere of influence decision are subject to section 56103.

[8] The Knox-Nisbet Act, a predecessor of the Reorganization Act, provided for the creation of a LAFCO in each county and defined the purposes and powers of LAFCOs. (*Hills for Everyone*, *supra*, 105 Cal.App.3d at p. 463, fn. 1.)

16.

moved for summary judgment, contending the validating statute provided the exclusive means for testing the validity of an annexation completed under the Municipal Organization Act of 1977 and asserting the association had failed to prepare, publish, serve and file proof of service of the summons in the form and within the period required by the validating statute. The defendants argued the undisputed failure to comply with these procedures required dismissal of the action pursuant to Code of Civil Procedure section 863. (*Hills for Everyone, supra,* at pp. 464-465.) The trial court agreed and granted summary judgment. The appellate court affirmed, concluding that the completed annexation could be tested only through the validating statute or a quo warranto proceeding by the Attorney General. (*Id*. at pp. 469-470.)

Therefore, *Hills for Everyone*, *supra*, 105 Cal.App.3d 461, provides an example of a case where a plaintiff alleged a LAFCO violated both CEQA and an act similar to the Reorganization Act and lost both claims because it failed to comply with the requirements of the validating statute. As a result, the case is precedent for the proposition that CEQA claims seeking to set aside a LAFCO's approval of an annexation must comply with the requirements for reverse validation actions. (See 2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act, *supra*, § 23.39, p. 1180, (rev. 3/13) [certain CEQA claims must be brought under the validating action statutes]; Code Civ. Proc., § 860 et seq.)

C.     Other Issues

Because we have determined that the procedures applicable to reverse validation actions apply to PAL's CEQA cause of action against Stanislaus LAFCO and operate as a bar to that cause of action, we need not decide the issues presented at the next two levels of analysis. First, we have not decided whether PAL has *stated a cause of action* under CEQA by setting forth allegations that track language in California Code of Regulations, title 14, section 15096, subdivisions (f) through (h) and asserting Stanislaus LAFCO did

17.

not comply with that language.  For example, we have not decided whether PAL has stated a cognizable CEQA claim by alleging that Stanislaus LAFCO's "findings, including the Statement of Overriding Considerations, are inadequate and not supported by substantial evidence in the record."  Second, assuming a CEQA cause of action was stated, we have not decided the merits of any such claim.  (Cf. *Woodward Park Homeowners Assn. v. City of Fresno* (2007) 150 Cal.App.4th 683, 719 [city's finding regarding one of the overriding considerations was not supported by substantial evidence].)

## DISPOSITION

The judgment is affirmed.  Stanislaus LAFCO and City of Ceres shall recover their costs on appeal.

_____

Franson, J.

WE CONCUR:


_____

Cornell, Acting P.J.


_____

Poochigian, J.