Filed 8/12/15  Wasco Real Properties v. Kern County LAFCO CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| WASCO REAL PROPERTIES I LLC et al., | F070357 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. CV275631) |
| KERN COUNTY LOCAL AGENCY FORMATION COMMISSION et al., | **OPINION** |
| Defendants and Respondents. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Sidney P. Chapin, Judge.

Nossaman, John J. Flynn III, Gregory W. Sanders and David J. Miller for Plaintiffs and Appellants.

McCormick, Kabot, Jenner & Lew and Nancy A. Jenner for Defendants and Respondents.

-ooOoo-

This case involves a challenge under the Cortese–Knox–Hertzberg Local Government Reorganization Act of 2000 (Reorganization Act; Gov. Code, § 56000 et seq.) to the expansion of an existing hospital district.[1]

In 2010, the Kern County Local Agency Formation Commission (Kern LAFCO or the Commission) approved the annexation of an area in northwest Kern County to the North Kern-South Tulare Hospital District (the District). A group of landowners (petitioners)[2] filed a petition for writ of mandate to invalidate the annexation, which the trial court denied.

On appeal, petitioners contend Kern LAFCO failed to comply with the Reorganization Act and this noncompliance resulted in prejudicial abuse of discretion.

We affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

The District was formed in 1966; its purpose is to provide healthcare services. (Health & Saf. Code, § 32000 et seq.) The District currently provides community health and wellness services and operates a 141-bed skilled nursing facility in Delano.

*Annexation proposal*

In 2009, the District submitted to Kern LAFCO an application seeking to annex approximately 208,000 acres. Prior to the proposed annexation, the District covered approximately 420,000 acres and included the cities of Delano and McFarland. The District proposed extending its boundary to include Wasco. The new proposed boundary extended south generally to Seventh Standard Road, but excluded Shafter. The proposed annexed area extended west of McCoy Avenue and east past Granite Road.

---

[1] All further statutory references are to the Government Code unless otherwise noted.

[2] Petitioners are Wasco Real Properties I LLC, Wegis Family Limited Partnership, Daniel L. Waterhouse, Kenneth E. and Sharon L. Paul, Melvin M. McConnell Farms, LP, Timothy H. and Karen E. Holtermann, cotrustees of the Tim & Karen Holtermann Trust, Philip Wayne and Sue Portwood, cotrustees of the Philip Portwood Family Trust, O & R Portwood Farms Family Limited Partnership, King & Gardiner Farms, LLC, and Farmland Reserve, Inc.

The annexation was part of the District's plan to expand healthcare services to Wasco and surrounding areas. In its application, the District explained that a 1989 study identified Shafter and Wasco as an area in need of healthcare services[3] and that the District was "prepared to increase service capacity south of the existing District." The District worked with the City of Wasco and Kern LAFCO staff prior to submitting its proposal. Shafter had requested not to be included in the proposed annexation, and the District honored that request.

The District planned to construct and operate a 10-acre healthcare facility south of the center of Wasco. It had prepared a preliminary master plan for new facilities, which eventually would include a specialized clinic, a 40-bed acute care hospital, a kitchen and dining area, and a 60-bed skilled nursing facility.

The District also requested to amend its sphere of influence to include the proposed annexation area and submitted a "MUNICIPAL SERVICE REVIEW AND SPHERE OF INFLUENCE UPDATE" (MSR) to support its request. The MSR included revenue and expenditures for fiscal years 2005–2006 through 2007–2008.[4]

In December 2009, a notice of public hearing on the annexation proposal was published in the *Bakersfield Californian* and the *Wasco Tribune*. A few landowners and the Richland School District wrote to the Executive Officer of Kern LAFCO, Rebecca Moore, requesting that their land (or in the case of the school district, the area within its

---

[3] Materials attached to the District's annexation application further explained: "There is a need for additional health care services within the District and beyond. The Kern County Economic Department has identified Health Services and Medical Technology as one of seven 'targeted industry clusters' needing additional development. The two main reasons Health Services have been targeted are the current shortage of well paying professional jobs and the lack of available health care options for a growing population. In addition, the entire … District is located within an area listed by the U.S. Department of Health and Human Services as a Health Professional Shortage Area."

[4] In each year, revenue exceeded expenditures by over $300,000. For example, in fiscal year 2007–2008, revenue from property taxes was $548,900, revenue from patient services was $9,478,867, and revenue exceeded expenditures by $560,541.

district) be excluded from the proposed annexation. Jack Sweeny, Community Development Director for Shafter, also wrote to Moore, asking that all land south of Kimberlina Road and east of Wasco Avenue be excluded from the annexation.

*Report and recommendation*

Moore prepared a report and recommendation, dated January 18, 2010. Moore wrote that the service of healthcare was not being provided by any local government agency in the proposed annexation area. (See § 56668, subd. (b).) She observed, however, that the portion of the proposed annexation area east of Shafter and east of Highway 99 could be served by healthcare facilities in Bakersfield more conveniently than by facilities in Wasco.

Section 56668 sets forth a list of factors that must be considered when deciding whether to approve an annexation proposal.[5] It appears that Moore intended to address

---

[5]     The version of section 56668 in effect at all relevant times identified 15 "[f]actors to be considered in the review of a proposal":

> "(a) Population and population density .… [¶] (b) The need for organized community services .… [¶] (c) The effect of the proposed action and of alternative actions, on adjacent areas, on mutual social and economic interests, and on the local governmental structure of the county. [¶] (d) The conformity of both the proposal and its anticipated effects with both the adopted commission policies on providing planned, orderly, efficient patterns of urban development .… [¶] (e) The effect of the proposal on maintaining the physical and economic integrity of agricultural lands .… [¶] (f) The definiteness and certainty of the boundaries of the territory, the nonconformance of proposed boundaries with lines of assessment or ownership, the creation of islands or corridors of unincorporated territory, and other similar matters affecting the proposed boundaries. [¶] (g) A regional transportation plan … and consistency with city or county general and specific plans. [¶] (h) The sphere of influence of any local agency which may be applicable to the proposal being reviewed. [¶] (i) The comments of any affected local agency or other public agency. [¶] (j) The ability of the newly formed or receiving entity to provide the services which are the subject of the application to the area, including the sufficiency of revenues for those services following the proposed boundary change. [¶] (k) Timely availability of water supplies adequate for projected needs .… [¶] (l) The extent to which the proposal will affect a city or cities and the county in achieving their respective fair shares of the regional housing needs .… [¶] (m) Any information or comments from the landowner or owners, voters, or residents of the affected

4.

each factor of section 56668 in order, but the six-page report in the administrative record skips page five.[6]  As a result, the report contains no consideration of subdivision (i), "[t]he comments of any affected local agency or other public agency," and subdivision (j), "[t]he ability of the newly formed or receiving entity to provide the services which are the subject of the application to the area, including the sufficiency of revenues for those services following the proposed boundary change."

Moore recommended Kern LAFCO approve a modified annexation boundary that generally excluded areas that were both south of Dresser Avenue and east of Wasco Avenue.[7]

### Public meeting, modification of annexation area, and approval of modified annexation

On January 27, 2010, Kern LAFCO considered the annexation proposal at its public meeting.  Landowners who had contacted Moore asking for exclusion from the annexation attended the meeting, and Kern LAFCO and the District agreed to exclude most of those areas.  The District also agreed to exclude a large area east of Highway 99 because the residents of that area were close to hospitals in Bakersfield.  As newly modified, the proposed annexation area covered about 137,000 acres.

Dan Murray, District Administrator, spoke on behalf the District.  He described the District's plans to build a healthcare campus in Wasco and develop a series of rural health clinics in Delano, Wasco, and other towns.  He reported there was great support

---

territory.  [¶]  (n) Any information relating to existing land use designations.  [¶] (o) The extent to which the proposal will promote environmental justice.…" (Former § 56668, as amended by Stats. 2009, ch. 570, § 1.)  (Hereafter, citation to section 56668 will refer to this version of the statute.)

[6]     In pages three and four of the report, Moore considered the factors listed in subdivisions (a) through (h) of section 56668.  In page six, she addressed the factors listed in subdivisions (k) through (o).

[7]     Dresser Avenue is one mile south of Kimberlina Road.  Thus, Moore recommended partially granting Sweeny's request on behalf of Shafter.  Her recommendation, however, did not exclude the strip of land south of Kimberlina Road, north of Dresser Avenue, east of Wasco Avenue and west of Zachary Avenue as Sweeny requested.

from the community for expansion; a study commissioned by the District showed that nearly 90 percent of the Wasco community supported the District's plan for growth.

Much of the discussion of the proposed annexation concerned how the District's expansion of healthcare services would be paid for and whether the annexed areas would be subject to new property taxes. Murray stated the District had done three financial feasibility studies, which showed the project was "very viable." Murray explained the District would not gain any tax revenue from the annexation itself because of Proposition 13. The District could propose a parcel tax, but it would have to be approved by two-thirds of the voters within the District.

The chairman of the Commission asked whether an evaluation had been done "of the number of parcels involved in the uninhabited areas [of the proposed annexation] as opposed to the developed areas." At this point, Murray explained that, after discussion with Kern LAFCO staff, the District had agreed to "let go of the area to the east of [Highway] 99." In addition, with respect to the few landowners who had requested to be excluded from the annexation, referred to as "the Tracy ownership, the Handel ownership, and the Paramount ownership," the District had agreed to "release them from the boundaries on the edge." However, Murray declined to exclude two small parcels owned by the Tracy ownership that were completely surrounded by areas of annexation, stating that the District did not want to "create any islands."

The chairman expressed his concern that the District may "eventually end up having to impose a large burden on property owners out there in order to sustain something that you start." Murray told the Commission, "If we thought that after the four studies that we've conducted to date, we wouldn't be here wasting your time." He stated that he strongly believed the District would "have a positive bottom line." The chairman asked, "But there could be a lot of property owners who don't have a vote because they may own thousands of acres of land or hundreds of acres of land, but they don't live

6.

there, so they don't have a vote, but they do get taxed, right?" Murray did not disagree, responding, "Somebody is going to vote, and somebody is going to get taxed."

Murray told the Commission that the District did not consider additional tax revenue in its financial analysis of operation of services. Asked how construction of facilities would be paid for, Murray responded that the District would need to use voter-approved general obligation bonds, which would require a vote of the entire District.[8]

The chairman observed, "I think this portion of the agenda really was to discuss the finances and how you were going to provide the services. We appreciate your input on that."

Following Murray's comments, the City Manager of Shafter, John Guinn, addressed the Commission, noting that a hospital in the Shafter/Wasco area was "an admirable cause" and, further, that the Shafter City Council was supportive of a hospital. He explained, however, that Shafter had requested to be excluded from the annexation because of concerns about potential future taxes or fees. Guinn said the city had asked for a financial feasibility study and had not received one. He observed, "[I]t would be very nice to at least have some sense for how much demand for that public dollar is really going to be there."

Murray responded to Guinn's comments. He said the District would agree to "let loose" the Richland School District, but the District wanted "to keep in the vast majority of the balance of the area" because "[w]e think it's important to us in the long run." Regarding a potential bond measure, Murray explained, "[W]e looked at the cost of the general obligation bond per hundred thousand dollars of the valuation of the property"

---

[8] Murray also suggested bond obligations could be paid with future revenue from services: "Because of the volume of dollars that are going to be needed, the major portion of the construction would probably come through voter-approved general obligation bonds. [¶] Could we—can we beat that out from the standpoint of revenue in the future? Yes, you can. You can meet other obligations from the return on the investment if the ink is black and not have to take it from those people."

and "It would be under 20 dollars." He continued: "If I would put a hospital on your door, John [Guinn], your home is valued at half a million dollars, fine, you spend $100 a year for a hospital space. [¶] If you have a heart attack and have to travel to Bakersfield, are you going to make it? [¶] This community needs a hospital. We're going to serve all of this community. If Shafter wants to be excluded, that's fine. But we're going to give care."

The Mayor pro tem of Wasco and a few residents of Wasco spoke in favor of a hospital and the annexation. A commissioner also stated that additional healthcare services in the Wasco area was the "the number one issue with people. They'd like to see a hospital there."

In a six-to-three vote, Kern LAFCO approved the annexation proposal as modified[9] and amended sphere of influence covering the area of the modified annexation. By resolution No. 10-04—amended, Kern LAFCO found and determined that the annexation as modified "will be in the best public interest." Kern LAFCO also determined that "[t]he facts set out in the REPORT AND RECOMMENDATION of the Executive Officer dated January 27, 2010, are true." (The date of the report appears to be an error. The only report and recommendation on the annexation proposal we have been able to locate in the administrative record is dated January 18, 2010.)

*Protest*

After the 30-day period to request reconsideration of the annexation decision had passed (§ 56895, subd. (b)), various landowners affected by the decision submitted protests to Kern LAFCO. The protest hearing was held on October 25, 2010. Moore determined that approximately three percent of the landowners within the modified

---

**9** The modifications agreed to by the District were the exclusion of the following areas: land east of Highway 99, the area covered by the Richland School District, and land owned by the Tracy, Handel, and Paramount ownerships at the southern and western boundaries of the original proposed annexation area.

annexation area filed protests, well below the threshold for terminating the proceedings or requiring a vote to confirm the annexation. (See § 57075, subd. (a).) Kern LAFCO adopted the results of the protest hearing and proceeded with the modified annexation.

*Modified annexation becomes final*

By resolution No. 10-31, dated December 8, 2010, Kern LAFCO ordered the annexation of the modified area to the District. The resolution specified that the reason for the annexation was "to annex land into the North Kern South Tulare Hospital District in order to provide health care services to the area."

The annexation was recorded and became final on January 8, 2011.

*Petition for writ of mandate*

On January 13, 2012, petitioners initiated this action against Kern LAFCO and the District (respondents) by filing a petition for writ of mandate and complaint for damages[10] and declaratory relief. In the operative petition, petitioners alleged (1) the annexation application lacked information on the District's plan for providing services in violation of section 56653 and (2) in making its decision, Kern LAFCO violated section 56668 by failing to consider whether current services were adequate. Petitioners further alleged there was no substantial evidence supporting a determination that the current level of service was inadequate.

Respondents demurred, and after the trial court ruled on the demurrer, there remained a single cause of action for "reverse validation" of the completed annexation. (*McLeod v. Vista Unified School Dist*. (2008) 158 Cal.App.4th 1156, 1166.)

---

**10** Petitioners initially sought damages for alleged deprivation of civil rights, but the trial court granted respondents' motion for judgment on the pleadings as to all of petitioners' causes of action alleging civil rights violations.

We also note that the limitations period for an action challenging a LAFCO decision is 60 days. (Code Civ. Proc., § 860.) In this case, however, the parties agreed in writing to toll the limitations period, and they agree the petition was timely filed pursuant to their agreement.

After the parties filed opening, opposition, and reply briefs, the trial court held a trial on April 28, 2014. Since the administrative record and judicially noticed documents were the sole evidence, the trial was essentially an opportunity for oral argument by the parties' attorneys.

Petitioners' attorney, John Flynn asserted there was no "plan for providing services to the territory" in the record as required under section 56653. He argued the "plan" is intended to be a single document, but in this case, "the plan doesn't exist." Flynn also argued there was no explanation for excluding the Tracy ownership from the annexation, observing that it resulted in a "very, very odd" western boundary.

### Trial court denies petition

After the additional briefing was complete, the trial court denied the petition. The court found substantial evidence to support Kern LAFCO's decision. It further found: "Petitioners do not demonstrate that their rights have been adversely and substantially affected in any manner. The administrative record demonstrates Respondents['] compliance with Government Code sections 56653 and 56668." (Some capitalization omitted.)

## DISCUSSION

### I. Statutory framework and standard of review

A LAFCO is an administrative body created by the Reorganization Act "to control the process of municipality expansion." (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 495.) Such commissions are intended to encourage "planned, well-ordered, efficient urban development patterns with appropriate consideration of preserving open-space and agricultural lands within those patterns." (§ 56300, subd. (a).) Among their purposes are "discouraging urban sprawl, preserving open-space and prime agricultural lands, efficiently providing government services, and encouraging the orderly formation and development of local agencies based upon local conditions and circumstances." (§ 56301.)

10.

LAFCO's are empowered "[t]o review and approve with or without amendment, wholly, partially, or conditionally, or disapprove proposals for changes of organization or reorganization [including annexations[11]], consistent with written policies, procedures, and guidelines adopted by the commission." (§ 56375, subd. (a)(1).)

"A LAFCO annexation determination is quasi-legislative and, *before the annexation is completed* (i.e., final), may be challenged by a petition for a writ of ordinary mandamus brought under Code of Civil Procedure section 1085. [Citations.]" (*Protect Agricultural Land v. Stanislaus County Local Agency Formation Com.* (2014) 223 Cal.App.4th 550, 558.) "Once a LAFCO annexation determination is completed, however, its validity may be challenged only by an in rem proceeding under the validating statutes or by a quo warranto proceeding filed by the Attorney General. [Citation.]" (*Ibid.*; see § 56103 [authorizing action to determine validity of completed annexation]; Code Civ. Proc., §§ 860, 863.)

"'The courts exercise limited review of legislative acts by administrative bodies out of deference to the separation of powers between the Legislature and the judiciary, to the legislative delegation of administrative authority to the agency, and to the presumed expertise of the agency within its scope of authority." (*McBail & Co. v. Solano County Local Agency Formation Com.* (1998) 62 Cal.App.4th 1223, 1227 (*McBail*).) "Excessive judicial interference with [a] LAFCO's 'quasi-legislative actions would conflict with the well-settled principle that the legislative branch is entitled to deference from the courts because of the constitutional separation of powers. [Citations.]' [Citation.]" (*San Joaquin County Local Agency Formation Com. v. Superior Court* (2008) 162 Cal.App.4th 159, 167 (*SJ LAFCO*).)

---

**11**      A "[c]hange of organization" includes an "annexation to, or detachment from, a city or district." (Former § 56021, subd. (c), as amended by Stats. 2008, ch. 196, § 1 [law applicable at time of Kern LAFCO's actions].)

11.

LAFCO decisions "'enjoy a presumption of regularity'" but are not insulated from judicial review. (*McBail*, *supra*, 62 Cal.App.4th at p. 1227.) The standard for judicial review is governed by section 56107, which provides:

"(a) This division shall be liberally construed to effectuate its purposes. No change of organization or reorganization ordered under this division and no resolution adopted by the commission making determinations upon a proposal shall be invalidated because of any defect, error, irregularity, or omission in any act, determination, or procedure which does not adversely and substantially affect the rights of any person, city, county, district, the state, or any agency or subdivision of the state.

"(b) All determinations made by a commission under, and pursuant to, this division shall be final and conclusive in the absence of fraud or prejudicial abuse of discretion.

"(c) In any action or proceeding to attack, review, set aside, void, or annul a determination by a commission on grounds of noncompliance with this division, any inquiry shall extend only to whether there was fraud or a prejudicial abuse of discretion. Prejudicial abuse of discretion is established if the court finds that the determination or decision is not supported by substantial evidence in light of the whole record."[12]

We review de novo whether there is substantial evidence to support Kern LAFCO's decision. (*SJ LAFCO*, *supra*, 162 Cal.App.4th at p. 167 ["This substantial evidence review is purely a question of law and is limited to the administrative record."].)

---

[12] The parties disagree on whether a challenger who satisfies subdivision (c) of section 56107 must, *in addition*, establish substantial adverse effect under subdivision (a) in order to invalidate a LAFCO determination or decision. We need not decide the issue, however, because, as explained below, we conclude there was substantial evidence in the record to support Kern LAFCO's decision.

## II. There is a rational connection between Kern LAFCO's stated reason for the modified annexation and the purposes of the Reorganization Act

Initially, we reject petitioners' contention that there is no rational connection between Kern LAFCO's actions and the factors it was required to consider. Kern LAFCO's stated reason for ordering the annexation, "to provide health care services to the area," is patently rationally connected to the Reorganization Act's purposes of "efficiently providing government services," "development of local agencies based upon local conditions and circumstances" (§ 56301), and considerations of "[t]he need for organized community services" (§ 56668, subd. (b)).

Petitioners' reliance on *McBail* for their contrary position is misplaced. In *McBail*, the challengers were landowners who sought to have their land annexed to the City of Fairfield. Solano County LAFCO denied the annexation proposal. The commission's reason for the denial, as stated in a resolution was, "'Travis Air Force Base[] is an important and viable economic asset of Solano County'" and "'further urbanization east of Peabody Road that does not enhance the mission of Travis Air Force Base should be denied.'" (*McBail*, *supra*, 62 Cal.App.4th at p. 1226.)

The *McBail* court identified its task as "determin[ing] whether LAFCO's single stated reason for denying the petition bears any rational connection to the purposes of the Act and to its standards for evaluating an annexation petition." (*McBail*, *supra*, 62 Cal.App.4th at p. 1231.) Solano County LAFCO apparently relied exclusively on one standard out of a set of 11 standards it had adopted for evaluating annexation proposals. (*Id*. at pp. 1228–1231.) This standard required the commission "to consider the effect of the proposed annexation on 'adjacent areas, mutual social and economic interest, and on local governmental structure'" and provided that an annexation "proposal 'should create no significant negative social or economic effects on the County or neighboring agencies.'" (*Id*. at p. 1231, fn. omitted.)

13.

The court rejected the commission's position that its denial of the annexation proposal was rationally connected to the offered standard:

> "We fail to see how [Solano County] LAFCO's finding that 'further urbanization east of Peabody Road that does not enhance the mission of Travis Air Force Base should be denied,' and its resulting denial of the petition are in any way rationally connected to a standard which allows for the rejection of proposals that create *significant negative* effects on the county or neighboring agencies. [Solano County] LAFCO did not reject the proposal because of perceived negative impacts, but rather for its failure to *enhance* a neighboring property owner's 'mission.' *Requiring an applicant to show how it will enhance a neighboring property is clearly beyond the scope of the Act*." (*McBail*, *supra*, 62 Cal.App.4th at p. 1231, third italics added.)

The court held that Solano County LAFCO abused its discretion in denying the annexation application on the ground that it did not enhance Travis Air Force Base's mission. (*McBail*, *supra*, 62 Cal.App.4th at p. 1231.)

Petitioners appear to read *McBail* as requiring a LAFCO to prove that its decision is rationally connected to *every single factor* identified in section 56668 (the 15 "[f]actors to be considered in the review of a proposal"; see fn. 5, *ante*). But this is not what *McBail* required or expected of a LAFCO decision. Rather, the court only required Solano County LAFCO's stated reason for its decision to be rationally connected to at least one identifiable relevant factor or consideration under the Reorganization Act. The court could find *no* relevant factor that was rationally connected to the commission's stated reason for its decision and, consequently, found Solano County LAFCO to have acted "clearly beyond the scope of the Act." (*McBail*, *supra*, 62 Cal.App.4th at p. 1231.)

Here, Kern LAFCO's stated reason for ordering the annexation was "to provide health care services to the area." The Commission further found that the service of healthcare was not being provided by any local government agency in the proposed annexation area. There is uncontradicted evidence in the record showing, first, there is a need for healthcare services in Wasco, Shafter, and surrounding areas and, second, the

14.

District plans to provide healthcare services to the area through a healthcare campus in Wasco and additional rural clinics. Kern LAFCO's stated reason for ordering the annexation is obviously rationally connected to its purposes of providing government services and promoting the development of local agencies based upon local conditions. (§ 56301.) Providing healthcare services to the annexed area is also clearly connected to "[t]he need for organized community services," a factor to be considered under section 56668, subdivision (b).

### III. *Substantial evidence supports LAFCO's approval of the modified annexation*

Petitioners assert the District failed to comply with section 56653 (which requires certain information in an agency's annexation application) and Kern LAFCO[13] failed to comply with section 56668 (which identifies factors to be considered in reviewing an annexation application). They contend that these failures constituted a prejudicial abuse of discretion as a matter of law. (§ 56107, subd. (c).) The relevant issue for determining whether there was "prejudicial abuse of discretion" as the phrase is used in section 56107, subdivision (c), is whether Kern LAFCO's actions are "supported by substantial evidence in light of the whole record." Indeed, petitioners recognize in their reply brief that the "central issue in this appeal is whether [Kern] LAFCO's approval of the District's annexation [as modified] is supported by substantial evidence." Accordingly, in assessing petitioners' claims, we consider whether the alleged instances of noncompliance with statute resulted in an absence of substantial evidence to support LAFCO's decision.

---

**13** Petitioners' opening brief asserts the District failed to comply with both sections 56653 and 56668. Because section 56668 applies to a LAFCO's review of a proposal for change of organization, we assume petitioners meant that Kern LAFCO, not the District, failed to comply with section 56668.

### A.   Section 56668

Petitioners contend the administrative record does not contain substantial evidence of any connection between Kern LAFCO's decision and the factors set forth in section 56668. We reject this contention for the reasons discussed above. Kern LAFCO's annexation order is clearly connected to "[t]he need for organized community services." (§ 56668, subd. (b).) The order expands the District's boundary and allows the District to move forward with its plans to provide healthcare services to Wasco and surrounding areas.

"We must presume [Kern] LAFCO considered the criteria as required by the [Reorganization] Act …." (*City of Santa Cruz v. Local Agency Formation Com.* (1978) 76 Cal.App.3d 381, 394.) Petitioners, however, claim the Commission could not have considered certain factors listed in section 56668 because there is *no* evidence in the record regarding these factors. We consider each claim in turn.

Petitioners argue there is no evidence in the record related to the factors listed in section 56668, subdivision (a), population, land use, and topography, and subdivision (f), definiteness of boundaries. This argument fails because Moore's report addressed these factors. Petitioners claim there is no evidence in the record related to "[t]he comments of any affected local agency or other public agency" (§ 56668, subd. (i)).[14] This claim fails because the record shows Kern LAFCO heard the comments of representatives of Wasco and Shafter and received and granted the request of Richland School District to be excluded from the annexation.

Petitioners contend there is no evidence in the record that Kern LAFCO considered "[t]he ability of the newly formed or receiving entity to provide the services which are the subject of the application to the area, including the sufficiency of revenues

---

**14**   Petitioners refer to this as subdivision (j) because section 56668 was amended and relettered in 2014. (Stats. 2014, ch. 112, § 7.)

16.

for those services following the proposed boundary change." (§ 56668, subd. (j).) But the Kern LAFCO clearly considered this factor. Most of the Commission's discussion of the annexation proposal at the January 27, 2010, public meeting was devoted to questions of how the District intended to pay for construction and day-to-day operations and whether the annexed area would be subject to new taxes. Accordingly, this contention also fails.

Petitioners also argue there is no evidence Kern LAFCO considered the effect the modification of the annexation area (removing about 70,000 acres) would have on the District's ability to provide services. At the public meeting, however, Murray discussed the removal of land from the proposed annexation area. His statement that the District wanted "to keep in the vast majority of the balance of the area" because "[w]e think it's important to us in the long run," suggested the modified annexation area provided sufficient property valuation for the District's planned construction, but further exclusions could make financing infeasible. This is sufficient evidence to defeat petitioners' argument.

### B.      Section 56653

Section 56663, subdivision (a), requires a local agency applying for an annexation to submit "a plan for providing services within the affected territory." The plan for providing services "shall include all of the following information":

> "(1)  An enumeration and description of the services to be extended to the affected territory.

> "(2)  The level and range of those services.

> "(3)  An indication of when those services can feasibly be extended to the affected territory.

> "(4)  An indication of any improvement or upgrading of structures, roads, sewer or water facilities, or other conditions the local agency would impose or require within the affected territory if the change of organization or reorganization is completed.

17.

"(5) Information with respect to how those services will be financed." (§ 56653, subd. (b).)

Here, the District's annexation application included a document entitled "PLAN FOR PROVIDING SERVICES," but, as petitioners point out, it is a table of government services provided by *other* agencies; the table does not describe services to be provided by the District. (For example, the table lists the services of fire protection, maintenance, and flood control but does not include the service of healthcare.)

The District's apparent failure to provide a single document clearly identifying the information required by section 56653, subdivision (b), however, did not result in lack of substantial evidence because information on the five required topics can be found in the administrative record.

First and second, information on "the services to be extended to the affected territory" and "[t]he level and range of those services," as required by section 56653, subdivision (b)(1) and (2), was included in the annexation application materials. In its application, the District explained, "The current administration has developed strong fiscal health for the District, and is prepared to increase service capacity south of the existing District." The District proposed a 10-acre healthcare campus in Wasco. The mitigated negative declaration (included with the District's annexation application) described the District's preliminary master plan. Additional information was provided at the January 27, 2010, public meeting. Murray described the District's plans to develop a series of rural clinics in Delano, Wasco, and Earlimart.

Third, information providing "[a]n indication of when those services can feasibly be extended to the affected territory" as required by section 56653, subdivision (b)(3), can be found in the District's application to amend its sphere of influence and Murray's discussion at the public meeting. In a response to a questionnaire related to the amended sphere of influence, the District wrote that it planned to develop a healthcare facility in Wasco in 2010. At the public meeting, Murray further described the District's intention

18.

to build a facility and begin with a rural health clinic with urgent care and a women's health center to "provide some immediate relief to the residents in the community throughout that area, certainly from Shafter to Wasco, Lost Hills, et cetera." He explained the facility would not operate an emergency room initially and the District would "have to grow into that." This was sufficient to meet the information requirement of section 56653, subdivision (b)(3).

Fourth, the annexation application provided "[a]n indication of any improvement or upgrading of structures, roads, sewer or water facilities, or other conditions the local agency would impose or require within the affected territory .…" (§ 56653, subd. (b)(4).) The District stated the annexation itself would not affect roads or create any need for upgrading facilities, but the proposed healthcare campus "may require new or additional infrastructure to be determined by the City of Wasco and Caltrans." The District indicated the healthcare campus "will incorporate right-of-way dedications to enable road improvements planned by the City of Wasco and Caltrans."

Fifth, "[i]nformation with respect to how those services will be financed" (§ 56653, subd. (b)(5)) was contained in the MSR and Moore's report and was discussed extensively at the public meeting. The MSR reported: "The City of Wasco, Redevelopment Agency has passed a resolution stating in addition to Wasco's support of the annexation, the donation of 10 acres for the District to build a … campus should a boundary expansion be approved. The independent financial audit of FY 2007–08 has indicated the District is positioned well for such expansion." The MSR explained the District would not receive any share of the property tax for the annexed territory, but "annexation of these areas would provide greater funding opportunities through potential bond measures." At the public hearing, Murray indicated that each facility should be able cover its own operating costs, but initial construction costs would be funded through voter-approved general obligation bonds. This was sufficient information to satisfy the information requirement of section 56653, subdivision (b)(5).

19.

All of the information described above was available to Kern LAFCO at the time it voted to approve the modified annexation. Section 56666, subdivision (b), provides, "At the hearing, the commission *shall* hear and receive any oral or written protests, objections, or evidence that shall be made, presented, or filed, and *consider* the report of the executive officer and *the plan for providing services to the territory* prepared pursuant to Section 56653." (Italics added.) Petitioners argue Kern LAFCO violated this section because no plan for providing services was ever submitted and, as a result, Kern LAFCO's "decision cannot be supported by substantial evidence." This argument fails because the information required by section 56653 was in the record for the Commission to consider before it voted on the modified annexation proposal.

Petitioners criticize the information in the record for lack of detail and specificity. They argue there is no evidence about how many patients the District will serve, what kind of illnesses it will be able to treat, and how many doctors and nurses will be employed. Certainly, we can imagine additional and more detailed information on the District's expansion plans might have been helpful to the Commission in making the annexation decision, but this does not demonstrate that the information that was provided in the record is insufficient. Petitioners also claim there was *no* information in the record "'with respect to how those services will be financed.'" Again, we do not dispute that more detailed information on how the District planned to finance healthcare services might have been helpful, but this does not change the fact that there *was* financing information in the record as described above.

In summary, we conclude any failure by the District to comply with section 56653, subdivision (b), did not result in a lack of substantial evidence to support Kern LAFCO's approval of the modified annexation.

### C.    *Claim of "unwritten policy"*

Petitioners assert Kern LAFCO's reason for approving the modified annexation boundary was "fundamentally irrational." They claim Kern LAFCO has an unwritten

20.

policy of excluding any landowners who request to be excluded from an annexation proposal, relying on the following statements made by respondents' attorney at trial:

> "[Petitioners] rely significantly on their argument that there were parcels removed from the annexation—annexed area. The entire complaint stems from the fact that [petitioners] did not request that their properties be excluded from the annexed area. Had they requested exclusion, they would have been excluded.

> "This is standard practice for LAFCO. If the land owner objects and asks to be removed, their request is granted. This is not some sinister, sneaky tactic done by LAFCO. This is their standard procedure, and [petitioners] just blew it by not asking, because for whatever reason, they didn't get a request in. After it was too late, after the annexation was already completed and recorded, they wanted out. And that would have meant starting the entire process over again, which LAFCO was not willing to do, nor were they legally bound to do that."

Arguments of counsel, however, are not evidence. (*Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 895, fn. 9.) Even if it were, our review is limited to the administrative record. (*SJ LAFCO*, *supra*, 162 Cal.App.4th at p. 167.) Here, evidence in the record shows Moore did not honor every request for exclusion from the annexation since she did not recommend fully granting Shafter's request. Further, Kern LAFCO did not fully grant the Tracy ownership's request to be excluded, and the District indicated that it would not agree to any additional carve-outs to the modified annexation area. Thus, there is no evidence supporting petitioners' claim that Kern LAFCO has an "unwritten policy" of excluding any landowner who asks to be excluded from any proposed annexation.

### D.     Conclusion

Petitioners have failed to demonstrate that Kern LAFCO's annexation decision is unsupported by substantial evidence in the record. We have reviewed the administrative record and conclude substantial evidence supports Kern LAFCO's annexation decision.

Accordingly, the trial court correctly denied the petition for writ of mandate. We need not consider the parties' remaining arguments.

### *DISPOSITION*

The judgment is affirmed. Respondents are awarded costs on appeal.

_____
KANE, J.

WE CONCUR:


_____
GOMES, Acting P.J.


_____
SMITH, J.