Filed 1/30/24  Kern Water Bank Authority v. Kern Local Agency Formation Commission CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| KERN WATER BANK AUTHORITY et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>KERN LOCAL AGENCY FORMATION COMMISSION,<br><br>Defendant and Appellant;<br><br>BUENA VISTA WATER STORAGE DISTRICT et al.,<br><br>Real Parties in Interest and Appellants. | F085669<br><br>(Super. Ct. No. BCV-21-101310)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Gregory A. Pulskamp, Judge.

McMurtrey, Hartsock, Worth & St. Lawrence, Isaac L. St. Lawrence, James A. Worth; Gatzke Dillon & Ballance and David P. Hubbard for Defendant and Appellant and Real Parties in Interest and Appellants.

Young Wooldridge, Steven M. Torigiani and Brett A. Stroud; Nossaman, Robert D. Thornton, David J. Miller; Klein DeNatale Goldner, Joseph D. Hughes, and R. Jeffrey Warren for Plaintiffs and Respondents.

-ooOoo-

Real party in interest Buena Vista Water Storage District (Buena Vista) submitted applications to the Kern Local Agency Formation Commission (Kern LAFCO) for an annexation and a sphere-of-influence amendment. Kern LAFCO adopted resolutions approving these applications. In a notice of exemption, Kern LAFCO stated the annexation and sphere-of-influence amendment were exempt from review under the California Environmental Quality Act (CEQA) (Pub. Resources Code,[1] § 21000 et seq.) because "it can be seen with certainty that there is no possibility" these activities "ha[ve] the potential to have a significant adverse effect on the environment."

Kern Water Bank Authority and West Kern Water District petitioned for a peremptory writ of mandate. They alleged Kern LAFCO's approvals violated CEQA because the requested annexation and sphere-of-influence amendment "are part of" "and/or a step in the implementation of" a larger groundwater recovery project and Kern LAFCO "failed to consider the [groundwater recovery p]roject's potential to cause foreseeable direct, indirect, and cumulative impacts on the environment." The superior court agreed with Kern Water Bank Authority and West Kern Water District, vacated the approvals, and granted writ relief.

On appeal, Kern LAFCO, Buena Vista, and Buena Vista Water Storage District Groundwater Sustainability Agency (Buena Vista GSA; the other real party in interest) contend the judgment must be reversed for two principal reasons. First, Kern Water Bank Authority and West Kern Water District did not file a timely challenge. Second,

---

[1] Unless indicated otherwise, subsequent statutory citations refer to the Public Resources Code.

2.

Kern LAFCO's approvals were "not part of" "or necessary to" the aforementioned groundwater recovery project. We reject these contentions and affirm the judgment.[2]

## BACKGROUND

### I. The parties

Buena Vista is a water storage district organized and existing pursuant to the California Water Storage District Law (Wat. Code, § 39000 et seq.). Its boundaries are located within Kern County. As a water storage district, Buena Vista is governed by an elected board of directors that has regulatory and police powers to operate facilities for storage and distribution of water. (See *id.*, §§ 39059, 40302, 40658, 43000; *Johnson v. Arvin-Edison Water Storage Dist.* (2009) 174 Cal.App.4th 729, 741.) According to Buena Vista, since its inception in 1927, it "has stored available water in the groundwater basin for use by its landowners in later dry years, when surface supplies are not available."

---

[2] Kern Water Bank Authority filed a "**MOTION TO DISMISS APPEAL**" on March 23, 2023. We deferred our ruling pending consideration of the appeal on its merits. Since we affirm the judgment on the merits, we need not consider this motion.

In addition, we received requests for judicial notice from both sides. Appellants asked us to judicially notice the following materials: (1) an April 2022 notice of determination for the groundwater recovery project; (2) Kern Water Bank Authority and West Kern Water District's May 20, 2022 writ petition challenging Buena Vista's approval of the groundwater recovery project; (3) Buena Vista's June 22, 2023 resolution regarding the withdrawal of approval and certification of the final environmental impact report (EIR) certification for the groundwater recovery project; (4) a June 30, 2023 case management statement submitted by Kern Water Bank Authority; and (5) a June 30, 2023 revised case management statement filed by Buena Vista. Kern Water Bank Authority asked us to judicially notice the following materials: (1) a document titled "Frequently Asked Questions on Groundwater Sustainability Agencies" dated November 22, 2017, which is available on the State Water Resource Control Board's website; and (2) the aforementioned June 22, 2023 resolution. We deferred our rulings pending consideration of the appeal on its merits. Having done so, we deny these requests because the materials are not germane to our analysis.

3.

Buena Vista GSA is a groundwater sustainability agency organized and existing pursuant to the Sustainable Groundwater Management Act (SGMA) (Wat. Code, § 10720 et seq.). It is governed by members of Buena Vista's board of directors and its boundaries and jurisdictional area "coincide closely with those of" Buena Vista. Buena Vista GSA was created in 2015 to manage a portion of the Kern County subbasin, a "high-priority basin" "identified as having critical overdraft conditions." In January 2020, Buena Vista GSA entered into a coordination agreement with four other groundwater sustainability agencies: Henry Miller Water District; Kern Groundwater Authority; Kern River Groundwater Sustainability Agency; and Olcese Water District Groundwater Sustainability Agency. (See *id.*, § 10727.6.) That same month, each of these groundwater sustainability agencies submitted a groundwater sustainability plan (GSP) for the Kern County subbasin to the Department of Water Resources. (See *id.*, § 10733.4, subd. (a).)

Kern LAFCO is a local agency formation commission organized and existing pursuant to the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 (Reorganization Act) (Gov. Code, § 56000 et seq.). (See *Protect Agricultural Land v. Stanislaus County Local Agency Formation Com.* (2014) 223 Cal.App.4th 550, 558 (*Protect Agricultural Land*) ["Each county in California is required to have a [local agency formation commission]."].) Its principal office is in Bakersfield. "Among the purposes of a [local agency formation commission] are discouraging urban sprawl, preserving open-space and prime agricultural lands, encouraging the efficient provision of government services, and encouraging the orderly formation and development of local agencies based upon local conditions and circumstances." (Gov. Code, § 56301.) "[A] [local agency formation commission]'s statutory authority includes the power to approve or disapprove (1) petitions for annexation, (2) proposals for changes of organization or reorganization, and (3) requests by [local agencies] for amendments to their spheres of influence." (*Protect Agricultural Land*, *supra*, at p. 558, citing Gov. Code, §§ 56375,

4.

56428, subd. (e).) " 'Annexation' means the inclusion, attachment, or addition of territory to a city or district" (Gov. Code, § 56017) and is an example of a change of organization (see *id.*, § 56021, subds. (c)–(d)). " 'Sphere of influence' means a plan for the probable physical boundaries and service area of a local agency, as determined by the commission." (*Id.*, § 56076.)[3] Under the Reorganization Act, annexation determinations "shall be consistent with the spheres of influence of the local agencies affected by those determinations." (Gov. Code, § 56375.5.)

West Kern Water District is a water district organized and existing pursuant to the County Water District Law (Wat. Code, § 30000 et seq.). Under that law, such a district "may store water for the benefit of the district, conserve water for future use, and appropriate, acquire, and conserve water and water rights for any useful purpose" (*id.*, § 31021); "may operate water rights, works, property, rights, and privileges useful or necessary to convey, supply, store, or make use of water for any [authorized] purpose" (*id.*, § 31022); and "may do any act necessary to furnish sufficient water in the district for any present or future beneficial use" (*id.*, § 31020). West Kern Water District operates the North Recharge and Recovery Project and provides water for municipal and industrial uses to those within its boundaries.

Kern Water Bank Authority is a joint powers authority organized and existing pursuant to the Joint Exercise of Powers Act (Gov. Code, § 6500 et seq.), which "provides a means by which governmental agencies may join together to accomplish goals that they could not accomplish alone, or that they might more efficiently and more

---

[3] " '[A] "sphere of influence" is a prospective measure, charting what a city's or a district's boundaries might be at some future point.' [Citation.]" (*Community Water Coalition v. Santa Cruz County Local Agency Formation Com.* (2011) 200 Cal.App.4th 1317, 1325, fn. 3.) "A district's 'sphere of influence' is not necessarily coextensive with its existing service area" (*Modesto Irrigation Dist. v. Pacific Gas & Electric Co.* (N.D.Cal. 2004) 309 F.Supp.2d 1156, 1159, fn. 4), but "jurisdictional boundaries are '*de facto* less expansive than "spheres of influence" ' " (*Community Water Coalition*, *supra*, at p. 1325, fn. 3).

effectively accomplish together" (*Robings v. Santa Monica Mountains Conservancy* (2010) 188 Cal.App.4th 952, 962). "Under that act, when authorized by their governing bodies to do so, 'two or more public agencies by agreement may jointly exercise any power common to the contracting parties' " (*Robings v. Santa Monica Mountains Conservancy*, *supra*, at p. 962, quoting Gov. Code, § 6502) and may join in the creation of a separate entity to exercise those powers on their behalf (see Gov. Code, §§ 6507, 6542). Kern Water Bank Authority is comprised of six members: Dudley Ridge Water District; Kern County Water Agency; Semitropic Water Storage District; Tejon-Castac Water District; Westside Mutual Water Company; and Wheeler Ridge-Maricopa Water Storage District. It operates the Kern Water Bank, which "stores available surface water in wet years through a process of groundwater recharge using recharge ponds or basins located [therein]" "for recovery and use in dry years when surface supplies are deficient."

## II.     The property at issue ("Subject Property")

The Subject Property consists of at least four parcels totaling approximately 630 acres, all of which lie outside the boundaries of both Buena Vista and Buena Vista GSA. According to Buena Vista, it purchased these parcels in 2019 and 2020 and is the sole owner and possessor thereof. The North Recharge and Recovery Project is located south of the Subject Property. The Kern Water Bank is located southeast of the Subject Property.

## III.    History

On June 3, 2020, Buena Vista's board of directors adopted Resolution No. 4392 titled "**A RESOLUTION OF APPLICATION PROPOSING PROCEEDINGS FOR ANNEXATION OF TERRITORY TO [BUENA VISTA] AS THE PALMS ANNEXATION**." The resolution stated in part:

> "**WHEREAS**, [Buena Vista] desires to propose a change of organization, to wit, the annexation to [Buena Vista] of the [Subject Property] pursuant to Section 56654, et seq., of the Government Code of the State of California; and

6.

"**WHEREAS**, the [Subject Property] is outside [Buena Vista]'s Sphere of Influence Boundary; and

"**WHEREAS**, [Buena Vista] solely owns title to, and possesses, the lands to be annexed; and

"**WHEREAS**, the property to be annexed is being developed for a groundwater recovery project and has not, and will not, receive water service from [Buena Vista] or be entitled to any of [Buena Vista]'s water rights.

"**NOW, THEREFORE, BE IT RESOLVED** by [Buena Vista's] Board of Directors . . . that it finds and determines as follows:

"1.    That [Buena Vista] hereby proposes the annexation to [Buena Vista] of the [Subject Property] . . . .

"2.    That this proposal for change of organization, to wit, annexation, is made pursuant to the [Reorganization Act], and it is requested that proceedings be authorized for annexation in accordance therewith.

"3.    That the reason for the proposed change of organization is that [Buena Vista], as the sole landowner, desires to use the [S]ubject [P]roperty for groundwater recovery purposes and management of groundwater in accordance with [SGMA].

"4.    That the prospective groundwater recovery project will comply with laws and regulations relating to the preparation and adoption of the environmental documents as set forth in [CEQA] which will be followed and all documents related to its completion shall be submitted to [Kern LAFCO] by [Buena Vista]'s representative. [¶] . . . [¶]

"7.    That the [Subject Property] . . . is outside [Buena Vista]'s Sphere of Influence Boundary."

On or around June 16, 2020, Buena Vista prepared a "**NOTICE OF PREPARATION AND INITIAL STUDY OF AN ENVIRONMENTAL IMPACT REPORT AND PUBLIC SCOPING MEETING**" "**FOR THE PALMS GROUNDWATER RECOVERY PROJECT**." The initial study described the Palms Groundwater Recovery Project as "includ[ing] the development of conveyance pipelines

7.

and [14] wells to facilitate the recovery of previously stored groundwater," which would take place not only within Buena Vista's boundaries but also "an annexed area located to the east [there]of," i.e., the Subject Property. Recovered water would be "limited to no more than 25,000 acre-feet" annually and "distributed to [Buena Vista's] water users," "exchanged with other districts," "sold to other industrial or municipal users," and/or "discharge[d] into the California Aqueduct to satisfy existing and future water contracts between [Buena Vista] and other Public Water Agencies." The initial study concluded the Palms Groundwater Recovery Project had the potential to significantly impact hydrology and water quality as well as biological, cultural, and tribal cultural resources, all of which would be detailed in a subsequent EIR. The notice of preparation stated the Palms Groundwater Recovery Project would "meet[] the requirements of the [SGMA]."

Buena Vista completed a "**SPHERE OF INFLUENCE AMENDMENT APPLICATION**" dated September 15, 2020, to Kern LAFCO. In response to the prompt "Provide additional information that the agency deems relevant for the [sphere of influence] amendment," Buena Vista wrote:

> "[Sphere of influence] amendment is requested to match the new [Buena Vista] boundaries resulting [f]rom the requested annexation of lands owned by [Buena Vista]."

In response to the prompt "List the proposed land uses for the proposed amendment area," Buena Vista wrote: "Potential groundwater recovery project."

On September 18, 2020, Buena Vista filed a "**Notice of Exemption**" with regard to the "Palms Annexation." Under the heading "Reasons why project is exempt," Buena Vista wrote:

> "The instant project does not involve the construction or alteration of any facilities, or any change in existing uses of the property. The property will remain in its present condition until such time as plans for future use of the property are developed and fully considered. Any future use or development will be subject to further, separate, review for compliance with CEQA as necessary. In light of the foregoing, it can be seen with

8.

certainty that there is no possibility that the proposed project has the potential to have a significant adverse effect on the environment. As such, the proposed project is exempt from CEQA pursuant to CEQA Guidelines[4] Sections 15060(c)(2) and 15061(b)(3)."

On October 2, 2020, Buena Vista submitted an "Application for Annexation" titled "Palms Annexation" to Kern LAFCO. Under the heading "Nature of Proposal," Buena Vista wrote:

"The nature of this proposal is to annex properties acquired by [Buena Vista] located outside its boundaries and sphere of influence . . . . As the sole owner of the [S]ubject [P]roperty, [Buena Vista] is proposing to utilize the property for a groundwater recovery project to better manage surface supplies and groundwater. [Buena Vista] is requesting that [Kern] LAFCO approve annexation of [these] properties and amend [Buena Vista]'s [sphere of influence] accordingly."

In response to the prompt "Describe any planned development that would result from or be facilitated by this proposed boundary change," Buena Vista wrote: "[Buena Vista] will consider using the property for a banked water recovery project." Buena Vista answered "No" to the question "Is the proposal area within the sphere of influence of the annexing agency?" and—per instructions—attached its "**SPHERE OF INFLUENCE AMENDMENT APPLICATION**." In response to the prompt "Provide any other comments or justifications regarding the proposal," Buena Vista wrote:

"All the parcels to be annexed are owned by [Buena Vista]. These lands are currently 'white lands.' Inclusion in [Buena Vista]'s territory will facilitate better groundwater management and compliance with SGMA."

---

**4** In this opinion, "CEQA Guidelines" and "Guidelines" refer to California Code of Regulations, title 14, section 15000 et seq., "the regulations for the implementation of CEQA authorized by the Legislature" (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 380, fn. 2 (*Muzzy Ranch*)) and " 'prescribed by the Secretary for Resources to be followed by all state and local agencies in California in the implementation of [CEQA]' " (*ibid.*). "In interpreting CEQA, we accord the CEQA Guidelines great weight except where they are clearly unauthorized or erroneous." (*Ibid.*)

In or around December 2020, Buena Vista prepared a draft EIR for the Palms Groundwater Recovery Project, which identified the following as potentially significant environmental impacts, among other things: (1) violations of water quality standards or waste discharge requirements or substantial degradation of surface or groundwater quality; (2) cumulative impacts causing groundwater level depletion; and (3) cumulative impacts increasing the risk of subsidence. The draft EIR acknowledged "[i]mpacts to SGMA sustainability goals" constituted an "area[] of controversy and issue[] of concern" but assured the Palms Groundwater Recovery Project would still "meet[] the requirements of SGMA." It noted Buena Vista GSA—"bordered by" Kern Groundwater Authority and Kern River Groundwater Sustainability Agency—"is the exclusive [groundwater sustainability agency] within its territory with powers to comply with SGMA [citation]."

Kern Water Bank Authority submitted a letter dated January 18, 2021, to Buena Vista objecting to the Palms Groundwater Recovery Project. Among other things, Kern Water Bank Authority—a member agency of Kern Groundwater Authority[5]—argued:

> "[Kern Groundwater Authority] has jurisdiction over the area in which [Buena Vista] proposes to install new extraction wells. The water extracted from those wells would then be pumped out of [Kern Groundwater Authority's] jurisdiction, in violation of the standards set by [Kern Groundwater Authority's] members and the adopted GSP."

Kern Water Bank Authority also submitted a letter dated January 25, 2021, to Kern LAFCO opposing approval of Buena Vista's "proposed Palms Annexation." Kern Water Bank Authority asserted:

> "The annexation clearly cannot be approved based on a CEQA exemption. The Palms Annexation is a component of Buena Vista's Palms Groundwater Recovery Project that may cause potentially significant

---

[5] Under SGMA, a combination of local agencies may form a groundwater sustainability agency by using a joint powers agreement, memorandum of agreement, or another legal agreement. (Wat. Code, § 10723.6, subd. (a).)

unmitigated groundwater and water quality impacts and mine and export
. . . groundwater from the [Kern Groundwater Authority].  That Project is
currently under environmental review in an EIR.  Thus, [Kern] LAFCO as a
responsible agency[6] will need to consider the environmental effects of the
Project as shown in the final EIR, prepared in compliance with CEQA, that
are relevant to [Kern] LAFCO's consideration of the annexation, and
making the findings required by law including CEQA, before deciding
whether or not to approve the Palms Annexation."

Kern Groundwater Authority—a joint powers authority organized and existing
pursuant to the Joint Exercise of Powers Act—submitted a letter dated January 27, 2021,
to Buena Vista objecting to the Palms Groundwater Recovery Project.  Kern
Groundwater Authority reiterated:

"The Proposed Project proposes to install new wells in [Kern
Groundwater Authority]'s boundary and extract water from these wells.
The [draft EIR] discloses that this extraction may result in the violation of
minimum thresholds set by [Kern Groundwater Authority] members and
included in [Kern Groundwater Authority's] GSP.  Because this impact is
prohibited by SGMA, the Proposed Project is unlawful and cannot be
approved."

Buena Vista submitted a letter dated February 18, 2021, to Kern LAFCO to
address objections raised in Kern Water Bank Authority's January 25, 2021 letter.  Buena
Vista maintained the Subject Property is a " 'whiteland[]' " "not currently within the
boundaries of any water district or local agency providing water services."  It explained:

"[Kern Water Bank Authority] inaccurately claims that [the Subject
Property is] within the [Kern Groundwater Authority's] coverage area.
Maps showing [groundwater sustainability agencies'] boundaries on [the
Department of Water Resource]'s website have not been updated for some

_____

**6** " 'Responsible agency' means a public agency which proposes to carry out or
approve a project, for which a lead agency is preparing or has prepared an EIR or
negative declaration.  For the purposes of CEQA, the term 'responsible agency' includes
all public agencies other than the lead agency which have discretionary approval power
over the project." (Guidelines, § 15381; see Guidelines, § 15051, subd. (a) ["Where two
or more agencies will be involved with a project, . . .  [¶]  . . . [i]f the project will be
carried out by a public agency, that agency shall be the lead agency even if the project
would be located within the jurisdiction of another public agency."].)

11.

time and are currently not completely accurate.  Two of the subject parcels . . . were initially included within the [Kern Groundwater Authority] via a contract with Rosedale-Rio Bravo Water Storage District.[7]  However, by way of letter dated April 22, 2019 . . . , [Buena Vista] withdrew from that agreement and from the [Kern Groundwater Authority] and elected to be included in [Buena Vista GSA]'s GSP.[8]  Further, the landowner of the two other parcels . . . never entered into a 'Whitelands Agreement' to be covered in the [Kern Groundwater Authority]'s GSP.  Rather, at the request of the landowner, these lands were included in [Buena Vista GSA's] GSP.  All of the lands that are proposed to be annexed are covered by [Buena Vista GSA's] GSP.[9]  Notwithstanding this fact, the proposed annexation does not change existing coverage for SGMA purposes."

Buena Vista added:

"As [Buena Vista] understands, [Kern] LAFC[O] considers SGMA compliance when considering proposed annexations, however, [Kern] LAFC[O] does not have the authority to detach lands from one [groundwater sustainability agency] and annex them into another.  Therefore, the proposed annexation of these 'whiteland' parcels would not change which [groundwater sustainability agency] and GSP covers those lands for SGMA compliance."

Buena Vista also remarked:

"The [Palms Groundwater] Recovery Project is proposed on lands that include the parcels which are also the subject of the requested annexation, as well as other lands which are not identified in the annexation application.  However, other than this fact, there is no connection between the Recovery Project and the proposed annexation.  The desire to annex the subject parcels into [Buena Vista] has nothing to do with the Recovery Project, or any particular project that may or may not be developed.  Rather, the property is being annexed for taxation purposes.  The proposed annexation will be requested whether or not the Recovery Project goes forward.

---

**7** Rosedale-Rio Bravo Water Storage District is another member agency of Kern Groundwater Authority.

**8** Buena Vista attached a copy of the April 22, 2019 letter.

**9** Following Kern LAFCO's approvals, appellants have contradictorily argued the Subject Property is covered by Kern Groundwater Authority's GSP.  We deem this argument waived "based on common notions of fairness."  (*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1519.)

12.

Similarly, the Recovery Project is not dependent on the annexation. Public agencies throughout Kern County develop, construct, and operate projects on lands that are not within their boundaries. The Recovery Project would be no different and could proceed on the subject lands even if they are not annexed into [Buena Vista]. Whether or not the annexation is approved by [Kern] LAFC[O] will have no bearing on the Recovery Project. . . . It appears [Kern Water Bank Authority] has mistakenly assumed the proposed annexation is connected to the Recovery Project. Given that this is not accurate, the concerns raised in the [Kern Water Bank Authority] Letter regarding the impacts of the Recovery Project on the environment are not relevant to the proposed annexation and not appropriate for [Kern] LAFC[O]'s consideration."

West Kern Water District submitted a March 16, 2021 letter to Kern LAFCO opposing approval of Buena Vista's annexation request. West Kern Water District—another member agency of Kern Groundwater Authority—"object[ed] to Buena Vista's assertion that the . . . annexation proposal [is] not a component of the Palms [Groundwater Recovery] Project." West Kern Water District argued "absent the proposed annexation, the [Subject Property] would remain un-districted or 'white area' lands covered by the Kern Groundwater Authority and said recovery would take place outside of [Buena Vista's] service area and [groundwater sustainability agency]."

Kern Water Bank Authority submitted a second letter dated April 23, 2021, to Kern LAFCO, noting Buena Vista never mentioned "taxation purposes" as an objective of annexation prior to the February 18, 2021 letter. Kern Water Bank Authority insisted the annexation and sphere-of-influence amendment were not only "part of Buena Vista['s] Palms Groundwater [Recovery] Project" but also "a 'step' in the construction and implementation of the Palms Groundwater Recovery Project." Kern Water Bank Authority explained:

"The proposed annexation[] lands are within the jurisdiction of the [Kern Groundwater Authority]. Buena Vista seeks to transfer management of the groundwater from the [Kern Groundwater Authority] to the Buena Vista [GSA]. The lands cannot be transferred to the Buena Vista GSA without [Kern] LAFC[O]'s prior approval of the annexation.

13.

"[Kern Groundwater Authority] has drafted a [GSP] to comply with [SGMA] – the California law that requires sustainable management of groundwater. The [GSP] is under review by the Department of Water Resources . . . .

"Under SGMA, the removal of the [Subject Property] from [Kern Groundwater Authority]'s boundaries cannot occur unless [Kern] LAFC[O] first approves the annexation. The annexation is a required step before [Buena Vista] may seek the approval of the California Department of Water Resources . . . to remove the [Subject Property] from [Kern Groundwater Authority], and to include the [Subject Property] within the Buena Vista GSA. [Citation.] The Department of Water Resources may not even consider the modification of the [Kern Groundwater Authority] and Buena Vista GSA boundaries unless [Kern] LAFC[O] first approves the annexation. [Citation.]

"Buena Vista candidly admits that they intend to seek to replace [Kern Groundwater Authority], and to include the [Subject Property] within the jurisdiction of the Buena Vista GSA. The annexation will allow Buena Vista to manage the groundwater beneath the [Subject Property], and will eliminate the ability of [Kern Groundwater Authority] to manage the groundwater to comply with SGMA. However, without the annexation, neither Buena Vista nor the Buena Vista GSA have authority to manage the [Subject Property] under SGMA because the lands are located outside the jurisdictional boundaries of such local agencies. [Citation.]" (Boldface omitted.)

On April 28, 2021, following "NOTICED PUBLIC HEARINGS," Kern LAFCO adopted (1) Resolution No. 21-03, which approved the amendment to Buena Vista's sphere of influence; and (2) Resolution No. 21-04, which approved the annexation to Buena Vista. Internal documents demonstrate Kern LAFCO found: (1) the purpose of the annexation was "to eliminate the requirements to collect property taxes"; (2) the Palms Groundwater Recovery Project "is not dependent on the approval of the annexation"; and (3) Kern Water Bank Authority and West Kern Water District's concerns regarding the Palms Groundwater Recovery Project "do not address the application in hand."

On May 5, 2021, Kern LAFCO filed a "**NOTICE OF EXEMPTION**" for the "**[Buena Vista] Annexation No. 01 (Palms Annexation) and Sphere of Influence**

14.

**Amendment**."  Under the heading "*Reasons why project is exempt*," Kern LAFCO's rationale mirrored the one given in Buena Vista's notice of exemption:

> "The project does not involve the construction or alteration of any facilities, or any change in existing uses of the property.  The property will remain in its present condition until such time as plans for future use of the property are developed and fully considered.  Any future use or development will be subject to further, separate, review for compliance with CEQA as necessary.  In light of the foregoing, it can be seen with certainty that there is no possibility that the proposed project has the potential to have a significant adverse effect on the environment.  As such, the proposed project is exempt from CEQA pursuant to CEQA Guidelines Sections 15060(c)(2) and 15061(b)(3)."  (Boldface omitted.)

## IV.   Legal proceedings

On June 9, 2021, Kern Water Bank Authority and West Kern Water District filed a **"REVERSE VALIDATION ACTION; VERIFIED PETITION FOR PEREMPTORY WRIT OF MANDATE AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**."  They argued Kern LAFCO's approvals of Buena Vista's applications for an annexation and a sphere-of-influence amendment were "part of" and "a step in the implementation of" the Palms Groundwater Recovery Project and Kern LAFCO "improperly relied on inapplicable exemptions from CEQA."  In response, Kern LAFCO and Buena Vista asserted—among other things—the action was barred by the applicable statute of limitations.  Oral arguments were heard on October 20, 2022.

In a ruling dated November 2, 2022, the superior court concluded Kern LAFCO's approvals violated CEQA, vacated said approvals, and granted writ relief.  Specifically, the court found (1) the writ petition was not barred by the statute of limitations; (2) the " 'whole of the action' " "includes the [Palms Groundwater] Recovery Project and the [a]nnexation"; (3) the annexation was "a necessary step in the [Palms Groundwater] Recovery Project"; and (4) Guidelines sections 15060, subdivision (c)(2) and 15061, subdivision (b)(3) did not apply.  Judgment in favor of Kern Water Bank Authority and West Kern Water District was entered November 30, 2022.  Kern Water Bank Authority

15.

filed a "**NOTICE OF ENTRY OF JUDGMENT OR ORDER**" on December 9, 2022. Kern LAFCO, Buena Vista, and Buena Vista GSA filed a "**NOTICE OF APPEAL**" on January 27, 2023.

## DISCUSSION

**I.     CEQA overview**

"CEQA is a comprehensive scheme designed to provide long-term protection to the environment." (*Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 112 (*Mountain Lion*), citing § 21001.)  "CEQA contains a 'substantive mandate' requiring public agencies to refrain from approving projects with significant environmental effects if 'there are feasible alternatives or mitigation measures' that can substantially lessen or avoid those effects." (*County of San Diego v. Grossmont-Cuyamaca Community College Dist.* (2006) 141 Cal.App.4th 86, 98, italics omitted, quoting *Mountain Lion*, *supra*, at p. 134.)  A " '[s]ignificant effect on the environment' means a substantial, or potentially substantial, adverse change in any of the physical conditions within the area affected by the project including land, air, water, minerals, flora, fauna, ambient noise, and objects of historic or aesthetic significance." (Guidelines, § 15382.)

A CEQA assessment is often represented as a three-step process, but the steps themselves have been described differently.  On the one hand, the California Supreme Court detailed:

> "The first tier is jurisdictional, requiring that an agency conduct a preliminary review to determine whether an activity is subject to CEQA. (CEQA Guidelines, § 15060[10] . . . .)  An activity that is not a 'project' as

---

[10] Subdivision (c) of Guidelines section 15060—titled "Preliminary Review"—provides in part:

> "An activity is not subject to CEQA if:  [¶]  (1) The activity does not involve the exercise of discretionary powers by a public agency;  [¶] (2) The activity will not result in a direct or reasonably foreseeable indirect

16.

defined in the Public Resources Code (see § 21065) and the CEQA Guidelines (see [Guidelines,] § 15378) is not subject to CEQA.[11] (CEQA Guidelines, § 15060, subd. (c)(3).)

"The second tier concerns exemptions from CEQA review. . . . [¶] . . . [¶] If a public agency properly finds that a project is exempt from CEQA, no further environmental review is necessary. [Citation.] The agency need only prepare and file a notice of exemption [citations], citing

physical change in the environment; or [¶] (3) The activity is not a project as defined in Section 15378 [of the Guidelines]."

[11] Section 21065 provides in part:

" 'Project' means an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment, and which is any of the following:

"(a) An activity directly undertaken by any public agency. [¶] . . . [¶]

"(c) An activity that involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies."

Guidelines section 15378 provides in part:

"(a) 'Project' means the whole of an action, which has a potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment, and that is any of the following:

"(1) An activity directly undertaken by any public agency including but not limited to public works construction and related activities clearing or grading of land, improvements to existing public structures, enactment and amendment of zoning ordinances, and the adoption and amendment of local General Plans or elements thereof . . . [¶] . . . [¶]

"(3) An activity involving the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies. [¶] . . . [¶]

"(c) The term 'project' refers to the activity which is being approved and which may be subject to several discretionary approvals by governmental agencies. The term 'project' does not mean each separate governmental approval."

17.

the relevant statute or section of the CEQA Guidelines and including a brief statement of reasons to support the finding of exemption [citation]. If a project does not fall within an exemption, the agency must 'conduct an initial study to determine if the project may have a significant effect on the environment.' [Citation.] If there exists 'no substantial evidence that the project or any of its aspects may cause a significant effect on the environment' [citation], the agency must prepare a 'negative declaration' that briefly describes the reasons supporting its determination [citation].

"CEQA's third tier applies if the agency determines substantial evidence exists that an aspect of the project may cause a significant effect on the environment. In that event, the agency must ensure that a full [EIR] is prepared on the proposed project. [Citations.]" (*Muzzy Ranch*, *supra*, 41 Cal.4th at pp. 380–381; see *Tulare Lake Canal Co. v. Stratford Public Utility Dist.* (2023) 92 Cal.App.5th 380, 400, fn. 1 (*Tulare Lake*) ["(1) CEQA applicability, (2) exemption from environmental review, and (3) environmental review"].)

On the other hand, subdivision (k) of Guidelines section 15002 provides:

"Three Step Process. An agency will normally take up to three separate steps in deciding which document to prepare for a project subject to CEQA.

"(1) In the first step the lead agency[12] examines the project to determine whether the project is subject to CEQA at all. If the project is exempt, the process does not need to proceed any farther. The agency may prepare a notice of exemption. [Citations.]

"(2) If the project is not exempt, the lead agency takes the second step and conducts an initial study [citation] to determine whether the project may have a significant effect on the environment. If the initial study shows that there is no substantial evidence that the project may have a significant effect, the lead agency prepares a negative declaration. [Citation.]

"(3) If the initial study shows that the project may have a significant effect, the lead agency takes the third step and prepares an EIR. [Citation.]" (See *Tulare Lake*, *supra*, 92 Cal.App.5th at p. 400, fn. 1

---

**12** " 'Lead agency' means the public agency which has the principal responsibility for carrying out or approving a project. The lead agency will decide whether an EIR or negative declaration will be required for the project and will cause the document to be prepared." (Guidelines, § 15367.)

18.

["[T]he Guidelines' approach recognizes three steps correlated to the document produced at the end of that step."].)

"[T]he first step in the Guidelines encompasses the Supreme Court's first two tiers. The Supreme Court's third tier encompasses the Guidelines' second and third steps—an initial study that results in the adoption of a negative declaration or leads to the third step and the preparation of an [EIR]." (*Tulare Lake*, *supra*, 92 Cal.App.5th at p. 400, fn. 1.)

Generally, "[w]henever a project may have a significant and adverse physical effect on the environment, an EIR must be prepared and certified." (*Mountain Lion*, *supra*, 16 Cal.4th at p. 113, citing § 21100, subd. (a); see *Sundstrom v. County of Mendocino* (1988) 202 Cal.App.3d 296, 309 [" '[T]he word "may" connotes a "reasonable possibility." ' "].) The EIR "is the mechanism prescribed by CEQA to force informed decision making and to expose the decision making process to public scrutiny." (*Planning & Conservation League v. Department of Water Resources* (2000) 83 Cal.App.4th 892, 910.) As " 'the heart of CEQA' " (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 392, quoting Guidelines, § 15003, subd. (a)), the EIR "provides the public and responsible government agencies with detailed information on the potential environmental consequences of an agency's proposed decision" (*Mountain Lion*, *supra*, at p. 113).

"The Legislature has provided that certain projects, such as ministerial projects and repairs to public service facilities of an emergency nature, are exempt." (*Muzzy Ranch*, *supra*, 41 Cal.4th at p. 380; see § 21080, subd. (b); Guidelines, § 15260 et seq.) "In addition, pursuant to the Legislature's command [citation], the CEQA Guidelines list categorical exemptions or 'classes of projects' that the resources agency has determined to be exempt per se because they do not have a significant effect on the environment." (*Muzzy Ranch*, *supra*, at p. 380; see Guidelines, § 15300 et seq.) "A project that qualifies for neither a statutory nor a categorical exemption may nonetheless be found exempt under what is sometimes called the 'commonsense' exemption, which applies '[w]here it

19.

can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment.' " (*Muzzy Ranch*, *supra*, at p. 380, quoting Guidelines, § 15061, subd. (b)(3).) "If a public agency properly finds that a project is exempt from CEQA, no further environmental review is necessary." (*Muzzy Ranch*, *supra*, at p. 380.)

## II. Kern Water Bank Authority and West Kern Water District timely challenged Kern LAFCO's approvals.

a. *Standard of review*

"Where the underlying facts are not disputed, we review a finding regarding the applicability of CEQA's statute of limitations de novo." (*American Chemistry Council v. Department of Toxic Substances Control* (2022) 86 Cal.App.5th 146, 201.)

b. *Analysis*

"When a public agency decides that a project is exempt from CEQA pursuant to [Guidelines] Section 15061, and the public agency approves or determines to carry out the project, the agency may, file a notice of exemption." (Guidelines, § 15062, subd. (a); accord, Guidelines, § 15374; see Guidelines, § 15005, subd. (c) [" 'May' identifies a permissive element which is left fully to the discretion of the public agencies involved."].) "Such a notice may also be filed by an applicant where such a determination has been made by a public agency which must approve the project." (Guidelines, § 15374; accord, Guidelines, § 15062, subd. (c).) " 'Applicant' means a person who proposes to carry out a project which needs a lease, permit, license, certificate, or other entitlement for use or financial assistance from one or more public agencies when that person applies for the governmental approval or assistance." (Guidelines, § 15351; see Guidelines, § 15376 [" 'Person' includes any person, firm, association, organization, partnership, business, trust, corporation, limited liability company, company, district, city, county, city and county, town, the state, and any of the agencies and political subdivisions of such entities . . . ."].)

20.

"The benefit that a public agency and project proponent receive from filing a notice of exemption is a shorter statute of limitations." (*Coalition for Clean Air v. City of Visalia* (2012) 209 Cal.App.4th 408, 420 (*Coalition*).) "The filing of a Notice of Exemption and the posting on the list of notices start a 35 day statute of limitations period on legal challenges to the agency's decision that the project is exempt from CEQA. If a Notice of Exemption is not filed, a 180 day statute of limitations will apply." (Guidelines, § 15062, subd. (d); see § 21167, subd. (d); see also *San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1385 [" 'A notice of exemption has no significance other than to trigger the running of the limitations period.' "].)

"The notice shall be filed, if at all, after approval of the project." (Guidelines, § 15062, subd. (a).) Likewise, "[t]he notice shall not be filed, with the county clerk or OPR[13] until the project has been approved." (Guidelines, § 15062, subd. (b).) "[T]he foregoing provisions of Guidelines section 15062 unambiguously require notices of exemption to be filed after the project has been approved." (*Coalition*, *supra*, 209 Cal.App.4th at p. 423; see Guidelines, § 15005, subd. (a) [" 'Must' or 'shall' identifies a mandatory element which all public agencies are required to follow."].) "It follows that filing a notice of exemption before project approval does not begin the running of the 35-day limitations period . . . ." (*Coalition*, *supra*, at p. 423.)

Here, Buena Vista adopted a June 3, 2020 resolution to apply for the annexation of the Subject Property and submitted its applications for said annexation and a sphere-of-influence amendment to Kern LAFCO on October 2, 2020. Pursuant to its statutory authority (see *Protect Agricultural Land*, *supra*, 223 Cal.App.4th at p. 558), Kern LAFCO approved these applications on April 28, 2021. Thereafter, on May 5, 2021, Kern LAFCO filed a notice of exemption. On June 9, 2021, exactly 35 days after this

---

[13] "OPR" refers to "Office of Planning and Research." (See Guidelines, § 15023.)

notice was filed, Kern Water Bank Authority and West Kern Water District filed their writ petition. Thus, Kern LAFCO's approvals were timely challenged.

Appellants argue Kern Water Bank Authority and West Kern Water District's action was "barred by the statute of limitations" because they "attacked the wrong [notice of exemption]." (Boldface & capitalization omitted.) They point out Buena Vista filed its own notice of exemption on September 18, 2020. While a notice of exemption may be filed by the applicant (Guidelines, § 15374), Buena Vista's notice of exemption was filed more than seven months before Kern LAFCO's approvals. As mentioned, the Guidelines unequivocally state a notice of exemption "*shall* be filed, if at all, *after approval* of the project." (Guidelines, § 15062, subd. (a), italics added.)[14]

Curiously, although appellants apparently concede Kern LAFCO has the power to approve annexation proposals and—in fact—"approved Buena Vista's annexation request," they nonetheless contend Buena Vista's adoption of Resolution No. 4392 on June 3, 2020, constituted "approval of the annexation decision" because it "initiated the annexation process" and "there would have been nothing for [Kern] LAFCO to consider or act upon" "[w]ithout it." " 'Approval' means the decision by a public agency which

---

[14] Appellants emphasize Buena Vista was the lead agency (see *ante*, fn. 12) whereas Kern LAFCO was a responsible agency (see *ante*, fn. 6). These observations do not change the fact the filing of Buena Vista's notice of exemption predated Kern LAFCO's approvals by 222 days.

To the extent appellants suggest CEQA does not permit challenges aimed at a responsible agency's action, we reject the notion. A responsible agency still retains "discretionary approval power over [a] project." (Guidelines, § 15381.) Although the authority of a responsible agency to disapprove a project is more limited than that of a lead agency (Guidelines, § 15042), a responsible agency is still empowered to "refuse to approve a project in order to avoid direct or indirect environmental effects of that part of the project which the responsible agency would be called on to carry out or approve" (*ibid.*). A lawsuit may allege a responsible agency's approval violates CEQA. (See, e.g., *Protect Agricultural Land*, *supra*, 223 Cal.App.4th at p. 555 [the plaintiff pursued CEQA claim against a local agency formation commission that approved lead agency's application for an annexation and sphere-of-influence modification].)

22.

commits the agency to a definite course of action in regard to a project intended to be carried out by any person." (Guidelines, § 15352, subd. (a).) Under appellants' view, however, a local agency formation commission becomes obligated to approve an applicant's requests for an annexation and a sphere-of-influence amendment once the applicant manifests a mere intent to make them. In other words, "approval" of such applications precedes the actual submission thereof to the authorized decisionmaker. We refuse to countenance such absurd logic.

**III.   Kern LAFCO's approvals of Buena Vista's annexation and sphere-of-influence amendment applications constituted a prejudicial abuse of discretion.**

a. *Standard of review*

"In reviewing an agency's compliance with CEQA in the course of its legislative or quasi-legislative actions, the courts' inquiry 'shall extend only to whether there was a prejudicial abuse of discretion.' " (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 426 (*Vineyard*), quoting § 21168.5.) "Such an abuse is established 'if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence.' [Citations.]" (*Vineyard*, *supra*, at pp. 426–427.) "[A] reviewing court must adjust its scrutiny to the nature of the alleged defect . . . ." (*Id.* at p. 435.) Where the alleged defect predominantly relates to a legal error, the courts determine de novo whether the agency either complied with " 'legislatively mandated CEQA requirements' [citation]" or " 'failed to proceed in the manner prescribed by CEQA.' [Citations.]" (*Ibid.*) Where the alleged defect predominantly relates to a factual dispute, "the agency's conclusion would be reviewed only for substantial evidence." (*Ibid.*)

"An appellate court's review of the administrative record for legal error and substantial evidence in a CEQA case, as in other mandamus cases, is the same as the trial court's: [t]he appellate court reviews the agency's action, not the trial court's decision; in

that sense appellate judicial review under CEQA is de novo." (*Vineyard*, *supra*, 40 Cal.4th at p. 427; see *Association of Irritated Residents v. County of Madera* (2003) 107 Cal.App.4th 1383, 1390 [" 'The appellate court reviews the administrative record independently; the trial court's conclusions are not binding on it.' "].)

    b. *Analysis*

        i. <u>Kern LAFCO's approvals and the Palm Groundwater Recovery Project constituted the "whole of an action."</u>

" 'Project' is a term of art." (*Banning Ranch Conservancy v. City of Newport Beach* (2012) 211 Cal.App.4th 1209, 1220.) Section 21065 broadly defines a " '[p]roject' " as "an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment, and which is any of the following: [¶] (a) An activity directly undertaken by any public agency. [¶] . . . [¶] (c) An activity that involves the issuance to a [district, city, county, city and county, town, the state, and any of the agencies and political subdivisions of such entities] of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (See *ante*, fn. 11.) "The statutory definition is augmented by the Guidelines, which define a 'project' as '*the whole of an action*, which has a potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment . . . .' " (*Tuolumne County Citizens for Responsible Growth, Inc. v. City of Sonora* (2007) 155 Cal.App.4th 1214, 1222 (*Tuolumne*), quoting Guidelines, § 15378, subd. (a); see *ante*, fn. 11.) Additionally, (1) under Guidelines section 15378, subdivision (c), "[t]he term 'project' refers to the activity which is being approved and which may be subject to several discretionary approvals by governmental agencies" and "does not mean each separate governmental approval" (see *ante*, fn. 11); and (2) under Guidelines section 15165, "[w]here an individual project is a necessary precedent for action on a larger project . . . with significant environmental effect, an EIR must address itself to the scope of the larger

project" (accord, *Bozung v. Local Agency Formation Com.* (1975) 13 Cal.3d 263, 284, fn. 27 (*Bozung*) [quoting former § 15069 of the Guidelines], superseded by statute on other grounds as stated in *Natural Resources Defense Council, Inc. v. City of Los Angeles* (2002) 103 Cal.App.4th 268, 271, fn. 2).

"The California Supreme Court has considered how to interpret the word 'project' and concluded that CEQA is 'to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language.' [Citation.]" (*Tuolumne*, *supra*, 155 Cal.App.4th at p. 1222; see *CREED-21 v. City of San Diego* (2015) 234 Cal.App.4th 488, 503 [" ' "Project" is given a broad interpretation in order to maximize protection of the environment.' "].) "This big picture approach . . . prevents a proponent or a public agency from avoiding CEQA requirements by dividing a project into smaller components which, when considered separately, may not have a significant environmental effect." (*Nelson v. County of Kern* (2010) 190 Cal.App.4th 252, 271; accord, *Tuolumne*, *supra*, 155 Cal.App.4th at pp. 1222–1223.)

"[T]he question concerning which acts constitute the 'whole of an action' for purposes of Guidelines section 15378 is a question of law that appellate courts independently decide based on the undisputed facts in the record." (*Tuolumne*, *supra*, 155 Cal.App.4th at p. 1224; see *Friends of College of San Mateo Gardens v. San Mateo County Community College Dist.* (2016) 1 Cal.5th 937, 952 ["Whether a proposed activity is a project within the meaning of CEQA is . . . a predominantly legal question, for it depends on whether 'undisputed data in the record on appeal' satisfy the detailed statutory definition of the term 'project.' "]; see also *Save Our Peninsula Committee v. Monterey County Bd. of Supervisors* (2001) 87 Cal.App.4th 99, 118 ["[Q]uestions of interpretation or application of the requirements of CEQA are matters of law."].)

Here, there is no dispute the Palms Groundwater Recovery Project is an activity that may cause physical changes in the environment. (See *ante*, at p. 10.) The issue is whether the Palms Groundwater Recovery Project *and* Kern LAFCO's approvals of

Buena Vista's applications for the annexation and sphere-of-influence amendment constituted the whole of an action. We conclude they do.

A local agency formation commission's approval of an annexation request is both "[a]n activity directly undertaken by any public agency" (§ 21065, subd. (a)) and "[a]n activity that involves the issuance to a person of . . . [an] entitlement for use by one or more public agencies" (§ 21065, subd. (c); see Guidelines, § 15376 [" '[p]erson' " includes any "district, city, county, city and county, town, the state, and any of the agencies and political subdivisions of such entities"]). (Accord, *Bozung*, *supra*, 13 Cal.3d at pp. 278–279.) Because Buena Vista submitted its applications for the annexation and sphere-of-influence amendment together, and annexation determinations must be "consistent with the spheres of influence of the local agencies affected by those determinations" (Gov. Code, § 56375.5), Kern LAFCO treated the two applications as a single application for annexation. In the abstract, the act of granting what amounts to a "piece of paper" (*Bozung*, *supra*, at p. 279) does not directly affect the environment (*ibid.*; *People ex rel. Younger v. Local Agency Formation Com.* (1978) 81 Cal.App.3d 464, 479). However, in view of CEQA, the Guidelines, and the aforementioned legal authority, such a "myopic analysis" (*Association for a Cleaner Environment v. Yosemite Community College Dist.* (2004) 116 Cal.App.4th 629, 639) is improper. Instead, we "examine how closely related" the approvals are to "the overall objective of" the Palms Groundwater Recovery Project. (*Tuolumne*, *supra*, 155 Cal.App.4th at p. 1226.) If the approvals are "among the 'various steps which taken together obtain an objective' " (*ibid.*), this relationship is "sufficiently close" (*ibid.*). (Cf. *Bozung*, *supra*, at pp. 269–270, 281 [development of agricultural land for residential, commercial, and recreational uses depended upon local agency formation commission's approval of annexation removing land from county's zoning authority].)

As mentioned, Buena Vista adopted a resolution to apply for the annexation of the Subject Property. This resolution unambiguously declared the Subject Property "is

outside [Buena Vista]'s Sphere of Influence Boundary" and "the reason for the proposed change of organization is that [Buena Vista], as the sole landowner, desires to use the [S]ubject [P]roperty for groundwater recovery purposes and management of groundwater in accordance with [SGMA]." In its annexation application, Buena Vista reiterated the Subject Property was "outside its boundaries and sphere of influence"; stated an annexation "will facilitate better groundwater management and compliance with SGMA"; and indicated a "banked water recovery project" "would result from or be facilitated by th[e] proposed boundary change." Both the notice of preparation/initial study and the draft EIR of the Palms Groundwater Recovery Project claimed the requirements of SGMA would be satisfied.

SGMA was enacted in 2014 to—among other things—"provide for the sustainable management of groundwater basins" (Wat. Code, § 10720.1, subd. (a)) "through the actions of local governmental agencies to the greatest extent feasible" (*id.*, subd. (h)) and "provide local groundwater agencies with the authority and the technical and financial assistance necessary to sustainably manage groundwater" (*id.*, subd. (d)). Under SGMA, local agencies—i.e., those that have "water supply, water management, or land use responsibilities within a groundwater basin" (Wat. Code, § 10721, subd. (n))—are allowed to form groundwater sustainability agencies, which "manage and regulate groundwater basins through adoption and implementation of [GSP's]." (*Environmental Law Foundation v. State Water Resources Control Bd.* (2018) 26 Cal.App.5th 844, 863; see Wat. Code, §§ 10723, 10727, 10727.2.)[15, 16] Among other things, a GSP must

_____

[15] In particular, "Groundwater sustainability agencies are obligated to develop and implement a [GSP] for a high priority groundwater basin" (*City of Marina v. County of Monterey* (2023) 97 Cal.App.5th 17, 24, citing Wat. Code, §§ 10727, subd. (a), 10728.4) such as the Kern County subbasin (see *King & Gardiner Farms, LLC v. County of Kern* (2020) 45 Cal.App.5th 814, 840–841).

[16] "Within 30 days of deciding to become or form a groundwater sustainability agency, the local agency or combination of local agencies shall inform the [Department of Water Resources] of its decision and its intent to undertake sustainable groundwater

contain a description of the aquifer system underlying the basin (Wat. Code, § 10727.2, subd. (a)), including a map identifying the area of the basin and "the boundaries of the groundwater sustainability agencies that overlie the basin that have or are developing [GSP's]" (*id.*, subd. (a)(4)); milestones to achieve sustainability goals (*id.*, subd. (b)); and measures to monitor and manage groundwater levels and quality (*id.*, subds. (d)–(f)). GSP's are subject to review by the Department of Water Resources. (See Wat. Code, §§ 10733, 10733.4, 10733.8.)

After adopting a GSP and submitting it to the Department of Water Resources, a groundwater sustainability agency may exercise an assortment of powers to carry out the purposes of SGMA. (Wat. Code, § 10725, subd. (a); see *id.*, §§ 10725–10726.9, 10730–10732.2). For example, a groundwater sustainability agency may conduct investigations (*id.*, § 10725.4); mandate registration of groundwater extraction facilities (*id.*, § 10725.6); require groundwater extraction facility owners or operators to purchase and install water-measuring devices (*id.*, § 10725.8, subds. (a)–(b)); require groundwater extraction facility owners or operators to file annual statements setting forth the total extraction of groundwater during the previous water year (*id.*, subd. (c)); impose spacing requirements on new groundwater well construction (Wat. Code, § 10726.4, subd. (a)(1)); regulate, limit, or suspend extractions from individual groundwater wells or groundwater wells in the aggregate (*id.*, subd. (a)(2)); regulate, limit, or suspend construction of new groundwater wells (*ibid.*); impose fees on groundwater extraction (Wat. Code, § 10730, subd. (a)); and impose civil penalties on those who extract groundwater in excess of authorized amounts (*id.*, § 10732). Moreover, a groundwater sustainability agency "may

management." (Wat. Code, § 10723.8, subd. (a).) The notification must include— among other things—the local agency's "service area boundaries." (*Id.*, subd. (a)(1).) "[A]fter the decision to be a groundwater sustainability agency takes effect, the groundwater sustainability agency shall be presumed to be the exclusive groundwater sustainability agency within the area of the basin within the service area of the local agency that the local agency is managing as described in the notice." (*Id.*, subd. (d).)

perform any act necessary or proper to carry out [SGMA's] purposes . . . ." (Wat. Code, § 10725.2, subd. (a).)

"Nothing in [SGMA], or in any groundwater management plan adopted pursuant to [SGMA], determines or alters surface water rights or groundwater rights under common law or any provision of law that determines or grants surface water rights." (Wat. Code, § 10720.5, subd. (b).) "Nothing in [SGMA] shall be construed as authorizing a local agency to make a binding determination of the water rights of any person or entity, or *to impose fees or regulatory requirements on activities outside the boundaries of the local agency*." (Wat. Code, § 10726.8, subd. (b), italics added.)

According to Buena Vista, Buena Vista GSA "is the exclusive [groundwater sustainability agency] within its territory with powers to comply with SGMA." However, while Buena Vista advised Kern LAFCO in a February 18, 2021 letter that the Subject Property was "included in" or "covered by" Buena Vista GSA's GSP, the record shows the Subject Property lies outside Buena Vista and Buena Vista GSA's aligned boundaries. In view of Water Code section 10726.8, subdivision (b), Buena Vista GSA lacked the authority to impose regulatory requirements—via the GSP or otherwise—on activities carried out on the Subject Property. To overcome this provision, Buena Vista and Buena Vista GSA's aligned boundaries must be modified to incorporate the Subject Property. As mentioned, SGMA requires a GSP to include a map delineating the boundaries of the groundwater sustainability agency (Wat. Code, § 10727.2, subd. (a)(4)) and a local agency's notification of intent to become a groundwater sustainability agency to identify said agency's "service area boundaries" (*id.*, § 10723.8, subd. (a); see *ante*, fn. 16), but it does not prescribe a procedure for adjusting those boundaries.[17] The entity

---

[17] Appellants refer to Water Code section 10726.2, subdivision (a), which provides:

"A groundwater sustainability agency may . . . . [¶] . . . [a]cquire by grant, purchase, lease, gift, devise, contract, construction, or otherwise, and hold, use,

vested with the power to permit such adjustments—as Buena Vista apparently recognized by filing its applications—is the regional local agency formation commission. (See *ante*, at pp. 4–5 & fn. 3.) By obtaining an annexation and a sphere-of-influence amendment, Buena Vista GSA would strengthen its own claim of SGMA jurisdiction over the Subject Property as well as subvert the jurisdictional claims of other groundwater sustainability agencies, namely Kern Groundwater Authority. Given the qualms expressed by Kern Groundwater Authority regarding the Palms Groundwater Recovery Project (see *ante*, at p. 11), Buena Vista would justifiably want its own groundwater sustainability agency to be at the helm.[18]

enjoy, sell, let, and dispose of, real and personal property of every kind, including lands, water rights, structures, buildings, rights-of-way, easements, and privileges, and construct, maintain, alter, and operate any and all works or improvements, within or outside the agency, necessary or proper to carry out any of the purposes of this part."

However, in light of the express language of Water Code section 10726.8, subdivision (b), Water Code section 10726.2, subdivision (a) cannot be interpreted to permit groundwater sustainability agencies to impose regulatory requirements—via a GSP or otherwise—on activities outside their boundaries.

Appellants also refer to Water Code section 43500, subdivision (a) (added by Stats. 1951, ch. 391, § 1; amended by Stats. 1963, ch. 239, § 1), under which a water storage district may acquire "[p]roperty either within or without the boundaries of the district for the construction, maintenance, improvement, or operation of works or the carrying out of the project in this State or in any other state or foreign nation." This provision, which was enacted over half a century before SGMA (Wat. Code, § 10720 et seq., added by Stats. 2014, ch. 346, § 3) and does not pertain to groundwater sustainability agencies, has no relevance in the instant case.

[18] Appellants contend Kern Groundwater Authority's joint powers agreement—to which Buena Vista claims to have been a party and from which it later withdrew at some point before submitting its annexation/sphere-of-influence amendment applications to Kern LAFCO—would have constrained Kern Groundwater Authority's dominion over the Subject Property. First, appellants cite provisions that explicitly apply to "Members." These provisions are inapplicable because Buena Vista is not a member.

Second, appellants assert the joint powers agreement does not permit Kern Groundwater Authority to "interfere with the groundwater rights or lawful pumping activities of any non-member who owns land in the [Kern Groundwater Authority]

Kern LAFCO's approvals were "a step in a series of activities" that "may culminate in a project which will change and affect the environment." (*People ex rel. Younger v. Local Agency Formation Com.*, *supra*, 81 Cal.App.3d at p. 479.) Therefore, we conclude Kern LAFCO's approvals and the Palm Groundwater Recovery Project constituted the whole of the action.

      ii.  <u>As a matter of law, the whole of the action was not exempt from CEQA review.</u>

In concluding Buena Vista's requested annexation and sphere-of-influence amendment were exempt from CEQA review, Kern LAFCO invoked Guidelines sections 15060, subdivision (c)(2) and 15061, subdivision (b)(3).

Under Guidelines section 15060, subdivision (c)(2), "[a]n activity is not subject to CEQA if: [¶] . . . [¶] . . . [t]he activity will not result in a direct or reasonably foreseeable indirect physical change in the environment . . . ." (See *ante*, fn. 10.)

---

planning area." Subdivision (f) of "**Section 6.02 – Admission, Withdrawal and Termination of Members**" reads in part:

> "Upon withdrawal or termination as a Member, the provisions of Section 2.04(b) shall remain applicable to any such withdrawing or terminated Member."

In turn, subdivision (b)(i) of "**Section 2.04 Powers**" and subdivision (l) of "**Article I: Definitions**" reads in part:

> "[Kern Groundwater] Authority shall not . . . undertake any activities within any Member's boundaries, or within a Management Area managed in whole or in part by such Member, unless the Member formally and expressly requests, consents to and agrees, in writing, to the activity proposed . . . ."

> " 'Management Area' shall mean the area within the boundaries of a Member or group of Members to be managed by that Member or group of Members under any GSP adopted by [Kern Groundwater] Authority."

In order for section 2.04, subdivision (b)(i) of the joint powers agreement to apply with respect to the Subject Property, however, said property must be within Buena Vista's "boundaries" or "Management Area." In other words, Buena Vista would need to annex the Subject Property and amend its sphere of influence.

Similarly, under Guidelines section 15061, subdivision (b)(3), known as the " 'commonsense' exemption" (*Muzzy Ranch*, *supra*, 41 Cal.4th at p. 380), "[w]here it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment, the activity is not subject to CEQA." (See *ante*, at pp. 19–20.)

At the time of its decision, Kern LAFCO did not perceive the requested annexation/sphere-of-influence amendment and the Palms Groundwater Recovery Project as "a single, coordinated endeavor" (*Association for a Cleaner Environment v. Yosemite Community College Dist.*, *supra*, 116 Cal.App.4th at p. 639) and instead focused its inquiry solely on the former. However, Kern LAFCO's approvals and the Palm Groundwater Recovery Project constituted the whole of the action and must be considered altogether when analyzing the "potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment" (Guidelines, § 15378, subd. (a)). (See *Berkeley Keep Jets Over the Bay Com. v. Board of Port Cmrs.* (2001) 91 Cal.App.4th 1344, 1358 ["There is no dispute that CEQA forbids 'piecemeal' review of the significant environmental impacts of a project."].)

Where "we are called upon to construe statutes and regulations on the basis of undisputed facts," "[d]e novo review is . . . appropriate." (*In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 674). Here, there is no dispute the Palms Groundwater Recovery Project is an activity that may cause physical changes in the environment, ergo the whole of the action may cause physical changes in the environment. (See *Myers v. Board of Supervisors* (1976) 58 Cal.App.3d 413, 426–427 [explicit claims of adverse environmental impacts sufficient to repudiate commonsense exemption "even if exaggerated or untrue"]; see also *California Farm Bureau Federation v. California Wildlife Conservation Bd.* (2006) 143 Cal.App.4th 173, 195 [party challenging commonsense exemption "need only make a 'slight' showing of a reasonable possibility

32.

of a significant environmental impact"].)  As a matter of law, neither section 15060, subdivision (c)(2) nor section 15061, subdivision (b)(3) of the Guidelines was applicable.

### iii. Kern LAFCO's failure to comply with CEQA was presumptively prejudicial.

"Noncompliance by a public agency with CEQA's substantive requirements or noncompliance with its information disclosure provisions that preclude relevant information from being presented . . . 'constitute[s] a prejudicial abuse of discretion . . . , regardless of whether a different outcome would have resulted if the public agency had complied with those provisions.' " (*City of Hayward v. Trustees of California State University* (2015) 242 Cal.App.4th 833, 839, quoting § 21005, subd. (a).)  "In other words, when an agency fails to proceed as required by CEQA, harmless error analysis is inapplicable." (*County of Amador v. El Dorado County Water Agency* (1999) 76 Cal.App.4th 931, 946.)

Here, Kern LAFCO did not comply with CEQA or the Guidelines because it approved Buena Vista's applications for the annexation and sphere-of-influence amendment without taking into account the whole of the action, "ma[king] meaningful assessment of potentially significant environmental impacts impossible." (*Santa Rita Union School Dist. v. City of Salinas* (2023) 94 Cal.App.5th 298, 333.)  Its decision "must be set aside as presumptively prejudicial." (*City of Hayward v. Trustees of California State University*, *supra*, 242 Cal.App.4th at p. 839.)

## **DISPOSITION**

The judgment is affirmed.  Costs on appeal are awarded to respondents Kern Water Bank Authority and West Kern Water District.

DETJEN, Acting P. J.

WE CONCUR:

FRANSON, J.

MEEHAN, J.